THE SUPERINTENDENT AND TRUSTEES OF PUBLIC SCHOOLS OF THE CITY OF TRENTON *vs.* IRA BENNETT and AARON CARLISLE.

1. If a person contract with the owner of a lot to build, erect and complete a building on a certain lot, and by reason of a latent defect in the soil, the building falls down before it is completed, the loss falls upon the contractor.

2. Where a contract is made to build and complete a building and find materials for a certain entire price, payable in installments as the work

School Trustees of Trenton v. Bennett.

progresses, the contract is entire; and if the building, either by fault of the builder or by inevitable accident, is destroyed before completion, the owner may recover back the installments he has paid.

3. If specifications require a cellar to be a certain depth, it is not a trade phrase which fixes the depth of the foundation walls; it is the duty of the builder to place the walls deep enough to get a sufficient foundation.

This was an action of *assumpsit*, brought against Bennett and Carlisle, as guarantors for Evernham and Hill. In the fall of 1856, the plaintiffs made a contract with Evernham and Hill to build and complete a school-house, and find all materials therefor, according to specifications annexed to the contract; the building to be located on a lot owned by the plaintiffs, and designated in the contract. Bennett and Carlisle guarantied the fulfillment of this contract on the part of Evernham and Hill. When the building was partially erected, it was blown down by a gale of wind. The contractors rebuilt it, and when nearly completed, the house again fell down, and the contractors, alleging that the second fall was occasioned by latent defects in the soil, refused to rebuild it.

The contract price was $2610, of which $2200 was to be paid in installments, as follows: $300 when the first floor of joists was on; $300 when the second floor of joists was on; $1000 when the building was enclosed; $400 when the plastering was done; $200 when the building was completed, except the rough-casting, and the balance to be paid when the whole was finished. When the building fell down the second time, installments to the amount of $1600 had been paid to the contractors. To recover the damages which the plaintiffs had sustained by reason of the non-fulfillment of the contract on the part of the contractors, this suit was brought against the guarantors.

The cause was tried at the Mercer Circuit, at April Term, 1858. On the trial, the plaintiffs, having proved the amount paid to the contractors, and that they had failed to complete the building according to contract, rested their case.

The defendants then opened their case, and offered to

prove that the plaintiffs procured the plan and specifications for the building to be made under the advice of builders or architects employed by them, and purchased the lot of land whereon the building was to be erected, and designated the particular location of the building, and the precise elevation of said building and its first floor, and that the contractors and defendants were not consulted about either the plan, specifications, lot purchased, particular location, or elevation; that the plaintiffs advertised for proposals to erect said building according to said plan and specifications, and that the contractors were the lowest bidders therefor, and proceeded to erect said building, and did erect the same in strict accordance with said specifications, and that as each portion of the building was completed, the completion of which was a condition precedent to the payment of an installment of the contract price, such completion was reported to the plaintiffs by the plaintiffs' agents; that all the work of the said contractors was done in strict accordance with the plans and specifications, in a workmanlike manner and of proper materials, and that they exercised all proper care over said building while in course of erection; that after the second floor of joists was laid on said building, and the installment due therefor was paid, a violent gale of wind arose suddenly, without any of the usual premonitory signs of a storm, and prostrated the said building; that the said contractors thereupon again proceeded to, and did erect said building of proper materials, and in a good workmanlike manner, in strict accordance with the said plans and specifications, until said building was enclosed, and the plastering nearly completed; that as each portion of said building was so again completed, its completion was reported to the plaintiffs by their agents, and the installment of one thousand dollars was paid; that when the building was thus enclosed, and nearly plastered, it fell, solely on account of the soil on which it stood having become soft and miry, and un-

able to support the weight of said building; that at the time the foundation walls were laid, the said soil appeared to be in all respects suitable for the support of such building; that said soil was at that time so hard as to be penetrated with difficulty by the pick-ax, and that its defects were latent; that said soil became soft and miry in the spring of the year, either by reason of the rising of the springs, or from other natural causes wholly beyond the control of said contractors; that by the uniform custom of the trade, the phrase " with a cellar under the building to be eight feet deep," is a trade phrase, meaning that the height of the foundation wall is to be of the depth of the cellar, measuring from the bottom of the cellar to the joists of the first floor.

The counsel of the plaintiffs moved to overrule said evidence so offered by said defendants, upon the ground that if all the facts offered to be proved were proved, they would constitute no legal defence to said action. The court overruled said defence, and, under the direction of the court, a verdict was taken for the plaintiffs for the amount of the installment paid the contractors, with interest, subject to the opinion of the court; and to the end that it might be decided whether the said verdict was properly rendered, it was directed that the case be certified to the Supreme Court, for its opinion upon the following points:

1. Were all or either of the facts offered to be proved on the part of the defendants competent evidence; if proved, would they constitute a valid legal defence to the action of said plaintiffs?

2. Should the damage occasioned by the destruction of the part of said building first erected, by the aforesaid gale of wind, be borne by the plaintiffs or the defendants?

Argued at February Term, 1859, before the CHIEF JUSTICE, and Justices OGDEN, VREDENBURGH, and WHELPLEY.

*Gummere* and *W. L. Dayton*, for defendants.

*E. W. Scudder* and *Dutcher*, for plaintiffs.

The opinion of the court was delivered by

WHELPLEY, J. This case presents the naked question whether, where a builder has agreed, by a contract under seal, with the owner of a lot of land "to build, erect, and complete a building upon the lot for a certain entire price, but payable in arbitrary installments, fixed without regard to the value of the work done, and the house before its completion falls down, solely by reason of a latent defect in the soil, and not on account of faulty construction, the loss falls upon the builder or the owner of the land."

The case comes before the court, upon a certificate from the Mercer Circuit, for the advisory opinion of this court.

The covenant of Evernham and Hill was to build, erect, and complete the school-house upon the lot in question for the sum of $2610; the whole price was to be paid for the whole building; the division of that sum into installments, payable at certain stages of the work, was not intended to sever the entirety of the contract, and make the payment of the installments payments for such parts of the work as might be done when they were payable: this division was made, not to apportion the price to the different parts of the work, but to suit the wants of the contractor, and aid him in the completion of the work; the consideration of the covenant to complete the building was the whole price, and not the mere balance that might remain after the payment of the installments: it cannot be pretended that the contractor, after payment of a part of the installments, might refuse to go on and complete the building, and yet retain that part of the price he had received. *Haslack* v. *Mayers*, 2 *Dutcher* 284.

No rule of law is more firmly established by a long train of decisions than this, that where a party, by his own *contract*, creates a duty or charge upon himself, he is

bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract; therefore, if a lessee covenant to repair a house, though it be burned by lightning, or thrown down by enemies, yet he is bound to repair it. *Paradine v. Jayne, Alleyn* 26 ; *Walton v. Waterhouse,* 2 *Wm. Saunders* 422, *a, note* 2 ; *Brecknock Company v. Pritchard,* 6 *Term Rep.* 750. This case was an action upon a covenant to build a bridge, and keep it in repair : the defendant pleaded that the bridge was carried away by the act of God, by a great and extraordinary flood, although well built and in good repair. The plea was held bad on demurrer.

To the same effect are *Bullock v. Dommit,* 6 *Term Rep.* 650; *Phillips v. Stevens,* 16 *Mass.* 238 ; *Dyer* 33, *a.* And there is no relief in equity. *Gates v. Green,* 4 *Paige* 355 ; *Holtzapffell v. Baker,* 18 *Ves.* 115. Chancellor Walworth, in Gates *v.* Green, in denying relief in equity against a covenant to pay rent after the destruction of the demised premises, admits the rule to be against natural law, and not to be found in the law of other countries where the civil law prevails ; yet says it is firmly established, notwithstanding the struggles of some of the early English Chancellors against it.

In *Beebe v. Johnson,* 19 *Wend.* 500, it was held by Nelson, C. J., delivering the opinion of the court, that the defendant was not excused from performing his covenant to perfect, in England, a patent granted in this country, so as to insure to the plaintiff the exclusive right of vending the patented article in the Canadas, because the power of granting such an exclusive privilege appertained not to the mother country, but to the provinces, and was never granted, except to subjects of Great Britain and residents of the provinces ; and the plaintiff and defendant were both American citizens.

The court said, if the covenant be within the range of possibility, however absurd or improbable the idea of ex-

ecution may be, it will be upheld, as where one covenants it shall rain to-morrow, or that the pope shall be at Westminster on a certain day. To bring the case within the rule of dispensation, it must appear that the thing to be done cannot by any means be accomplished; for if it be only improbable, or out of the power of the obligor, it is not deemed in law impossible. 3 *Comyn's Dig.* 93. If a party enter into an absolute contract, without any qualification or exception, and receives from the party with whom he contracts the consideration of such engagement, he must abide by the contract, and either do the act or pay the damages; *his liability arises from his own direct and positive undertaking.*

In *Lord* v. *Wheeler,* 1 *Gray* 282, where a workman had agreed to repair a building for an entire sum, and after the owner had moved in, it was burned up before the repairs were completed, it was held, that where one person agrees to expend labor upon a specific subject, the property of another, as to shoe his horse, or slate his dwelling-house, if the horse dies, or the dwelling-house is destroyed by fire, before the work is done, the performance of the contract becomes impossible, and *with the principal perishes the incident.* The case was clearly distinguished from the ordinary contract of one to erect a building upon the lands of another, performing the labor and supplying the materials therefor; where, if before the building is completed or accepted, it is destroyed by fire or other casualty, the loss falls upon the builder, he must rebuild. *The thing may be done, and he has contracted to do it.* 19 *Pick.* 275, *Nichols* v. *Adams; Brumby* v. *Smith,* 3 *Ala.* 123; 2 *Parsons on Con.* 184; 1 *Chit. on Con.* 568.

No matter how harsh and apparently unjust in its operation the rule may occasionally be, it cannot be denied that it has its foundations in good sense and inflexible honesty. He that agrees to do an act should *do it,* unless absolutely impossible. He should provide against contingencies in his contract. Where one of two innocent per-

sons must sustain a loss, the law casts it upon him who has agreed to sustain it, or rather the law leaves it where the agreement of the parties has put it; the law will not insert, for the benefit of one of the parties, by construction, an exception which the parties have not, either by design or neglect, inserted in their engagement. If a party, for a sufficient consideration, agrees to erect and complete a building upon a particular spot, and find all the materials, and do all the labor, he must erect and complete it, because he has agreed so to do. No matter what the expense, he must provide such a substruction as will sustain the building upon that spot, until it is complete and delivered to the owner. If he agrees to erect a house upon a spot where it cannot be done without driving piles, he must drive them, because he has agreed to do everything necessary to erect and complete the building. If the difficulties are apparent on the surface, he must overcome them. If they are not, but become apparent by excavation or the sinking of the building, the rule is the same. He must overcome them, and erect the building, simply because he has agreed to do so—to do everything necessary for that purpose.

The cases make no distinction between accidents that could be foreseen when the contract was entered into, and those that could not have been foreseen. Between accidents by the fault of the contractor, and those where he is without fault, they all rest upon the simple principle—such *is* the agreement, clear and unqualified, and it *must* be performed, no matter what the cost, if performance be not absolutely impossible.

The case of a bailment of an article—*locatio operis faciendi*—is not analogous to the case before the court; there, if the article intrusted to the workman is lost without his fault, the owner sustains the loss; not because he is *the owner*, but because the contract of bailment is well defined by the law; there is no *express* agreement to return the article to the owner in a finished state;

but the agreement is an implied agreement, a duty imposed by the law upon a bailee, because the chattel has been bailed to him, to use his best endeavors to protect the bailment from injury. Parsons states the obligation of the workman to be, to do the work in a proper manner, to employ the materials furnished in the right way. These obligations grow out of the act of bailment; they are its legal consequences, and the law declares them to be so, not because the parties have actually so stipulated, but because they are equitable and fair; and in the absence of express agreement such will be implied.

The case of *Menetone* v. *Athawes*, 3 *Burr.* 1592, was relied upon by defendants' counsel to show that when the failure to perform the contract was not the fault of the contractor, he can recover. It was the bailment of a ship, to be repaired while in the shipwrights' dock, for the use of which the owner paid £5. The vessel was burned when the repairs were nearly completed; the action was for these repairs. It was like the case of Lord *v.* Wheeler, before cited. The right to recover was put upon the ground that the plaintiff was not answerable for the accident, which happened without his default, unless there had been a special undertaking; that this liability did not grow out of the law of bailments.

The cases of *Trippe* v. *Armitage*, 4 *Mees. & Wels.* 689; *Woods* v. *Russell*, 5 *B. & Ald.* 942; *Clarks* v. *Spence*, 4 *Ad. & Ellis* 448, have no application; they are all cases arising under the bankrupt laws, involving the question when, under the circumstances of each case, the property in an incomplete chattel in process of manufacture passed out of the bankrupt, so as not to belong to his assignees. They are inapplicable, because the rights of the parties to this suit do not turn upon the question whether the property in an incomplete building is in the owner of the land or the builder, or whether the owner would derive a partial benefit from partial performance, but upon what was the express contract between the parties. The ques-

tion upon whom the loss is to fall, occasioned by an inevitable accident, is not to be settled by determining what is equitable, what is right, or by the application of the maxim, *res perit domino*, or by any nice philosophical disquisitions whether the owner or the builder shall bear the loss. These considerations—this maxim—have their full application in cases where the rights of the parties have not been fixed by contract, but are to be settled by the law upon facts of the case ; where resort is to be had to an implied contract, to a legal obligation raised by the law out of the natural equities of the case, in the absence of an express agreement.

Neither the destruction of the incomplete building by a sudden tornado, nor its falling by reason of a latent softness of the soil which rendered the foundation insecure, *necessarily* prevented the performance of the contract to build, erect, and complete this building for the specified price ; it can still be done, for aught that was opened to the jury as a defence, and overruled by the court.

The whole defence was properly overruled, because it did not show the performance of the covenant impossible, or any lawful excuse for non-performance of the contract.

I am also of opinion that the damage occasioned by the destruction of the building by the gale of wind must be borne by the defendants, for the reasons before given, and that the Circuit Court be advised accordingly.

CITED *in Brown* v. *Fitch*, 4 *Vr.* 422; *Mutual Benefit Life Ins. Co.* v. *Hillyard*, 8 *Vr.* 483 ; *Coles* v. *Celluloid Manufacturing Co.*, 10 *Vr.* 327 ; *Dermott* v. *Jones*, 2 *Wall.* 8.