24 N.J. Super. 604 (1953)
95 A.2d 435
IN THE MATTER OF THE TRUST ESTATE OF LEONOR F. LOREE.
Superior Court of New Jersey, Chancery Division.
Decided February 20, 1953.
*606 Mr. George P. Moser, attorney for the plaintiff.
Mr. Raymond J. Lamb, for the defendants (Messrs. Emory, Langen & Lamb, attorneys).
STANTON, J.S.C.
On April 11, 1904 Hudson Trust Company, hereinafter called the trustee, and Leonor F. Loree, hereinafter called the settlor, entered into an agreement under the terms of which the trustee was to collect the sum of $500,000, invest the same from time to time, pay the income thereon to the settlor in his lifetime and thereafter to certain named persons of whom three still survive, namely his children, James T. Loree, Robert F. Loree and Louis L. Collins. The settlor died on September 6, 1940. The trustee is to continue the payment of income to said children or their issue until the death of the last survivor of the three, when the principal will be distributed among the issue of the settlor in the manner set forth in the agreement. If at that time any of the issue is under 21 years of age, the trustee is to pay the income only of his share until he reaches the age of 21 years. The agreement makes no provision for the resignation of the trustee. A supplement to the agreement, dated the same date, contains this provision for the compensation of the trustee:
"The party of the second part as such trustee shall be entitled to charge and receive in full for all services rendered by it in the execution of the trusts assumed by it under said deed of trust two per centum of any and all sums collected and received by it as such trustee, to be paid out of such collections from time to time as the same are received."
The trust res consisting of securities and cash was received by the trustee in October 1904.
*607 During his lifetime the settlor consulted frequently with the trustee regarding the investment of the fund and informal accountings were made to him by the trustee from time to time. The trustee's account has never been allowed in any formal proceeding, nor has there ever been any criticism of the administration of the trust except in recent years and then only with respect to the purchase of certain bonds and certificates of the United States of America.
The basic question presented is whether plaintiff may receive compensation at a greater rate than that provided in the agreement, and if not, whether it may resign and be discharged from further obligations under the agreement.
It is clearly the feeling of all interested persons that if the trustee were allowed to resign it would be difficult, if not impossible, to get a suitable substituted trustee to serve for the compensation stipulated in the agreement. The only evidence with respect to a proper rate of compensation was that it should be five per centum on the income collected. It is to be noted that N.J.S. 3A:10-2 provides that the fiduciaries therein mentioned may retain five per centum on all income that comes into their hands without allowance by the court.
The rule is well settled that when a trust agreement fixes the trustee's compensation it will be binding upon the parties and the beneficiaries and will control the action of the court. Commercial Trust Company v. Spiegelberg, 117 N.J. Eq. 171 (Ch. 1934), affirmed Commercial Trust Co. v. Mason, 119 N.J. Eq. 376 (E. & A. 1936); In re Rothenberg, 136 N.J. Eq. 530 (Ch. 1945). In the latter case it was pointed out that the court may award adequate compensation to a substituted trustee notwithstanding the agreement of the original trustee. The trustee cites In re Battin, 89 N.J. Eq. 144 (Ch. 1916), as authority for the proposition that the court may in certain circumstances increase the agreed rate of compensation. In that case there were three trustees and the trust deed provided that the court should appoint a successor for any one dying, refusing *608 to serve or becoming unable to discharge his duty. Upon the death of one of the trustees, a petition was filed requesting the court to appoint a trust company as sole trustee. The two surviving trustees expressed a desire to resign and in the course of the proceeding all parties in interest agreed to the appointment of a trust company as sole trustee. The court permitted the resignation of the trustees and appointed a trust company as sole trustee. It asserted its clear power to appoint a trustee where there is none and stated that where it appoints a trustee it may, if it be necessary in order to secure a proper one, award compensation that will be fairly adequate regardless of the provisions for compensation in the deed. It is to be observed that in this, as in the Rothenberg case, there was no award of greater compensation to the original trustee. There was merely a recognition that it might be necessary to pay greater compensation than that fixed in the trust agreement to a substituted trustee.
The trustee quotes the following language from the opinion of the court in the case of In re Fidelity Union Title & Mortgage Guaranty Co., 136 N.J. Eq. 294, at 301 (Ch. 1945):
"As to trusts inter vivos, this court by virtue of its inherent powers in the field of trusts can relieve a trustee from serving for an inadequate compensation by increasing the compensation fixed by the trust instrument to make it adequate."
But it is interesting to note that the trust there being discussed was created by an order of the court and in the very order establishing it the court reserved unto itself the right to diminish or increase the trustee's compensation. There is nothing in the three last cited cases which would warrant a deviation from the general rule and an increase in the rate of compensation for the trustee. Before leaving this subject it may not be amiss to refer to N.J.S. 3A:10-4 which provides that on the settlement of the account of a non-testamentary trustee the court shall allow him such compensation as may have been agreed upon in the trust instrument, and in the absence of any such provision shall *609 allow him compensation in accordance with the rates fixed for the fiduciaries named in N.J.S. 3A:10-2.
The next question is whether the trustee may resign in the face of the opposition of the beneficiaries. The general rule is that a trustee, having accepted a trust, may not through his own act alone divest himself of the office or of its responsibilities; and in the absence of the consent of the beneficiaries he may in the discretion of the court be allowed to resign if such action would not be unduly detrimental to the administration of the estate, particularly if it would be unduly burdensome to him to require him to continue. To put it another way, it has been held that the court will discharge a trustee if there is sufficient reason for so doing, provided the estate and the persons interested therein will not be prejudiced by it. Bogert on Trusts, secs. 511 to 515; Restatement, Trusts, sec. 106; Clapp, Wills and Administration, sec. 484. N.J.S. 3A:11-1 provides in part as follows:
"A fiduciary may be discharged from the further duties of his office by the court to which he is accountable.
The court shall examine into the matter and if sufficient cause appears, the court may grant the discharge unless it will be prejudicial to the estate or persons interested therein or for any other reason the discharge ought not to be granted."
The only reason given by the trustee is that the compensation agreed upon between it and the settlor in 1904 is inadequate today. It maintains no cost accounting system and it did not offer any proof of its actual profit or loss in the administration of this trust. It merely showed the increase in the rate of salaries and wages paid by it today as compared with the year 1904. It argues that the depreciation of the value of the currency since 1904 is proof of the inadequacy of the agreed compensation.
There has been no attempt to show that the estate and the beneficiaries thereof would not be prejudiced by the resignation of the trustee. On the other hand, it is quite clear that *610 they would be to the extent that any substituted trustee would probably be compensated at the rate of five per centum on income received. The trustee could have foreseen in 1904 that this trust would probably require administration during several generations, and in entering into an agreement fixing the rate of its compensation it should have given consideration to the probability or possibility of those eventualities which it now says have come to pass. In Superintendent & Trustees of Public Schools of City of Trenton v. Bennett, 27 N.J.L. 513 (Sup. Ct. 1859), a case which has been very frequently cited, it was said at page 519:
"No matter how harsh and apparently unjust in its operation the rule may occasionally be, it cannot be denied that it has its foundations in good sense and inflexible honesty. He that agrees to do an act should do it, unless absolutely impossible. He should provide against contingencies in his contract. Where one of two innocent persons must sustain a loss, the law casts it upon him who has agreed to sustain it, or rather the law leaves it where the agreement of the parties has put it; the law will not insert, for the benefit of one of the parties, by construction, an exception which the parties have not, either by design or neglect, inserted in their engagement."
This rule should be applied here. The trustee could have provided against the contingencies of which it now complains. For one thing, the agreement could have contained terms and conditions under which it might resign. It could have provided, too, for revision of the rate of compensation by an appropriate court at certain intervals or upon a change of circumstances. In long-term commercial contracts it is not at all uncommon to find what are known as escape and escalator clauses designed to protect the parties thereto against the consequences, for instance, of substantially changed economic circumstances. The beneficiaries here are merely asking that the trustee perform its contract.
The trustee cites certain cases where a trustee was permitted to resign, but a statement of the facts in these cases clearly demonstrates that they are not authority for permitting a trustee to resign under the circumstances of this *611 case. In Green v. Blackwell, 31 N.J. Eq. 37 (Ch. 1879), one of two trustees of an inter vivos trust sought to resign and he was opposed by the beneficiaries. It was held there that the fact that the trust estate was increased ten times by the will of the settlor, a fact which was not in the contemplation of the parties, was sufficient reason to permit his resignation. There a personal trustee was relieved from a burden which he never agreed to assume. In Randall v. Gray, 80 N.J. Eq. 13 (Ch. 1912), an administrator agreed to serve without compensation upon the understanding that two persons in interest were to assist him; they failed to do so. Difficulties developed between the trustee and the beneficiaries who filed an action for an accounting. The administrator claimed that they had made unfair and unjust charges against him. The court held that under the circumstances the administrator should not be obliged against his will to continue to serve without compensation.
A further issue raised is whether the trustee is entitled to commissions of two per centum on the corpus of the trust. It will be observed that under the agreement the compensation was "to be paid out of such collections from time to time as the same are received." From the beginning of its administration the trustee regularly deducted two per centum from the income collected by it. It took no commissions on the corpus, and until this late date it made no claim for any. It explains its failure to do so by saying that it never filed an account and hence was not entitled to them in the absence of an allowance by a court in accounting proceedings, citing Wyckoff v. O'Neil, 72 N.J. Eq. 880 (E. & A. 1907), and cases of like import. The beneficiaries contend that if the trustee were entitled to such commissions at all, it could have taken the same upon the receipt of the corpus just as it had done upon the collection of income. This claim is made 44 years after the corpus came in its hands. The settlor consulted frequently with the trustee, as stated above, during the 36 years following the creation of the trust, but this question was never raised in his lifetime. Nor indeed until *612 very recently when the beneficiaries opposed its request for increased commissions on income.
When a dispute arises as to the meaning of a contract, the construction which the parties placed upon it is, as among them, the one to be adopted and enforced by the court. Van Dyke v. Anderson, 83 N.J. Eq. 568 (Ch. 1914). And if the language of an instrument is indefinite or ambiguous, the construction put thereon by the parties will ordinarily govern. Albert v. Ford Motor Co., 112 N.J.L. 597 (E. & A. 1934).
Under the circumstances of this case it is neither fair nor reasonable that the trustee should make claim for commissions on corpus now, 48 years after the time at which it might have taken the same, if it were at all entitled to them. Indeed it seems clear from its conduct throughout the years that it felt that the only compensation to which it was entitled was two per centum upon the income. The construction of the parties is adopted and it is concluded that the trustee is not entitled to commissions on corpus.
In the agreement the trustee was authorized to invest in any bonds or stocks regularly listed on the New York Stock Exchange on which interest or dividends had been paid or declared for not less than five consecutive years prior to the date of such investment; with the proviso that not more than one-tenth of the estate should be invested in the issue or issues of bonds or stocks of any one company at any one time. The trustee has invested from time to time in bonds of the United States of America, and did so with the knowledge of the settlor. The proofs are that at no time did it hold such securities in excess of one-tenth of the trust estate. It has not made a practice of investing in United States certificates, but did so occasionally to keep funds employed for short periods while it was awaiting the opportunity to invest at a proper price in the limited group permitted by the agreement. It is conceded that the bonds in which the trustee invested were listed on the New York Stock Exchange but that the certificates were not. The beneficiaries take the *613 narrow view that the word "company" means a private corporation. The settlor and the trustee regarded it as synonymous with issuing entity. The word "company" was used not in connection with the description of the authorized securities but only in that part of the agreement where the limitation was placed on the extent of the investment. A reasonable and proper construction of this clause would allow the trustee to invest in bonds of the United States of America which are listed on the New York Stock Exchange, provided that the amount thereof shall not exceed ten per centum of the entire estate, but not in its certificates.