James O. Moore, J.
This is a proceeding instituted by the Attorney-General upon behalf of the Cemetery Board of the State of New York against the Buffalo Cemetery Association, its officers and trustees, and three banking corporations. The relief originally sought was to declare certain loans made to the association by the respondent banks null and void, to direct the return to the association of collateral pledged to secure .such loans; to remove the officers and trustees of the association; and to surcharge the current trustees and the respondent Nelson Galster, a former trustee, with any loss occasioned by the alleged illegal pledges of collateral.
This controversy arises out of the action of the trustees of the association in financing the cost of constructing a public mausoleum as an addition to the facilities maintained and operated by the association. Neither the necessity nor propriety of this addition is questioned and no claim is made that the trustees failed to act in the best interest of the association in authorizing the construction of the mausoleum. To finance this structure the association, through its officers and trustees, borrowed money from the respondents Western Savings Bank, Erie County Savings Bank, and Marine Midland Trust Company of Western New York in the aggregate amount of $93,277. As collateral for such loans there were pledged to the Western Savings Bank three passbooks representing accounts with that bank in the name of Buffalo Cemetery Association bearing the respective designations ‘ ‘ Permanent Maintenance Fund ”, “ Current Maintenance Fund ’ ’, and ‘ ‘ Endowed Care Fund ’ ’. The loan from the Erie County Savings Bank was secured by a passbook designated “ Maintenance Fund ”. The collateral posted with Marine Midland consisted of corporate securities held in the name of the association, certain of which are designated “ Permanent Maintenance Fund”, “Maintenance Fund”, “Perpetual Care Fund ’ and other certificates contained no designation.
Subsequent to the argument of the motion, the matter was, at the request of all the parties, held generally in order to afford them an opportunity to effect a settlement of the controversy. In the interim period the loans have been substantially reduced by reason of the general operations of the cemetery including the mausoleum, without resort to the collateral pledged to the *951 banking institutions. The court is advised that the loan owing the Erie County Savings Bank has been repaid in full and the passbook pledged as collateral returned to the association. The loan owing Marine Midland has been reduced to approximately $2,000 and the only collateral retained by the bank consists of shares of stock of two companies which are held in the name of Buffalo Cemetery Association without further restriction or designation and constitute a part of the general funds of the association. Since the Attorney-General in his brief concedes that there is no claim for the release of stock certificates which bear no trust designation, the petition is rendered moot with respect to the respondent Erie County Savings Bank and the Marine Midland Trust Company of Western New York.
There remain for determination the claims asserted against Western Savings Bank and the individual respondents. Although the Attorney-General has withdrawn that part of the original prayer for relief which sought a declaration that the loans are null and. void, no agreement has been reached with respect to the passbooks, which are still held as collateral by Western against loans approximating $48,000.
The Membership Corporations Law creates the Cemetery Board consisting of the Secretary of State, the Attorney-General and the Commissioner of Health and invests it with the duty of administering the provisions of law governing public cemeteries. The board has the power to order a cemetery corporaton to take such action as is necessary to comply with the governing' provisions of law and to enforce its orders by mandamus or injunction in a summary proceeding or otherwise. (Membership Corporations Law, § 108.) After an investigation, the Cemetery Board referred this matter to the Attorney-General for appropriate action designed to release the accounts and securities which were trust funds from the collateral pledges made by the association to the respondent banks in connection with the loans. Although the trustees of the association agreed to effect such release, the bank refused to give up the collateral pledged and the instant proceeding was brought on by the Attorney-General upon behalf of the Cemetery Board.
The provisions of article 9 of the Membership Corporations Law entitled “ Cemetery Corporations ” impress a trust on all funds received by such corporations for permanent maintenance and for the perpetual care of specific lots or plots in such cemeteries. (Membership Corporations Law, § 86-a, subd. 2; § 92, subd. 1.) The enforcement and administration of these restrictions fall within the jurisdiction and competence of the Cemetery Board, and it is the duty of the board to protect the public *952 interest in these statutory trust funds. Moreover, the Attorney-General is vested with responsibility and broad powers to enforce such trusts by instituting appropriate proceedings to ensure the proper administration of cemetery trusts in compliance with the applicable provisions of law. (EPTL 8-1.5; 8-1.1, subd. [b]; 8-1.4, subd. [m].) Therefore, the petitioner acting through the Attorney-General has standing to institute and maintain this proceeding.
Beginning in August of 1966 and continuing through October of 1968, the association borrowed approximately $70,000 from the Western Savings Bank. These transactions were in the form of “passbook loans ” and in each instance the association executed a withdrawal check in the amount of the loan on a specified passbook account. The money, however, was not withdrawn from the accounts and the ‘ ‘ loan nature ’ ’ of the transactions is evidenced by the circumstances that demand notes bearing interest at rates ranging from 5%% to 7% were executed and delivered to the bank by the association for each sum. The notes contained a pledge as collateral security for a numbered passbook, which was thereafter retained by the bank, and resolutions authorizing the association to borrow the money and ‘ ‘ to pledge whatever security may be necessary ’ ’ were furnished the bank.
As a consequence, the bank holds as security for those loans the following accounts which bear the designations indicated below:
7058 Buffalo Cemetery Association — Current
Maintenance Fund (15%)
7059 Buffalo Cemetery Association
Permanent Maintenance Fund (10%)
46936 Buffalo Cemetery Association
Endowed Care Fund
At the time of the argument of the motion, the balances in these accounts and the loans secured by each account were approximately as follows:
Balance Loan
7058 $27,254. $24,257.
7059 $41,944. $23,886.
46936 $5,627. $4,160.
The court is advised that the loan balance has been further reduced and there has been no impairment of the collateral pledged.
Section 86-a of the Membership Corporations Law requires a cemetery corporation to deposit 15% of the gross proceeds *953 of the sale of lots and plots in a current maintenance fund to be used and applied for the sole purpose of the ordinary and necessary expenses for maintaining the cemetery. Although the use of such funds for the financing of a public mausoleum is at least questionable, no trust is impressed on them and no duty of inquiry is imposed on the depositary of such funds with respect to the intended use of the proceeds of loans secured by a collateral pledge of such funds.
The same section of the Membership Corporations Law (§ 86-a) requires that 10% of the gross proceeds of the sale of lots and plots be deposited in a permanent maintenance fund.' Subdivision 2 of section 86-a declares this to be a trust fund, the income from which shall be used for the purpose of maintaining and preserving the cemetery. The statute mandates that ‘ ‘ the principal of such fund shall remain inviolate ’ ’, except that by order of the Supreme Court it may be used for current maintenance and preservation of the cemetery.
In addition to the above-described funds which the cemetery must set up and maintain, section 91 provides that upon application of a prospective purchaser of a cemetery lot, an additional amount will be fixed as a reasonable charge for the perpetual care of a cemetery lot and upon the payment of such amount the cemetery will execute an agreement to provide the care which the income from such amount will permit. Section 92 provides that such sums received for perpetual care shall be held as trust funds.
Therefore, the bank had actual notice of the trust character of the deposits made by the association in the accounts represented by passbook 7059 “ Permanent Maintenance Fund ” and passbook 46936 ‘‘ Endowed Care Fund”. It was on notice from the designation of the accounts and the statutory provisions which impressed a trust upon these funds.
In Bischoff v. Yorkville Bank (218 N. Y. 106) a leading case relied upon by the respondents, the court recognized that a banking institution had the right to presume that a fiduciary will apply trust funds to their proper purpose and has no duty to inquire into the terms of the trust and in effect police the use of the proceeds. The court, however, pointed out that the bank’s immunity did not extend to participating in the diversion of known trust funds. The case holds that acquiring an advantage or benefit from such diversion constitutes such participation and requires restitution from the banking institution.
Since the integrity of these two trust funds is subject to a continuing threat so long as the collateral pledges remain in *954 effect, and the resort to such collateral by the bank would constitute participation in the unlawful diversion of the trust funds, the Western Savings Bank and the respondent trustees are directed to rescind the pledge agreements as to accounts 7059 and 46936, without in any wise affecting the obligations of the association to the bank for the loans. These two passbooks are to be returned to the association free and clear of any lien or right of setoff arising from such loans.
The prayer in the petition that the respondent trustees and the respondent Galster, a former trustee, should be removed and surcharged, is denied. The trustees acted in the best interest of the cemetery in causing the construction of a public mausoleum. It is evident that this addition is self-liquidating and has proven to be a valuable asset to the association. No claim is made that any of the trustees had any interest in the construction of these facilities or that they were motivated by anything other than the improvement of the association’s facilities.
The manner in which the construction of these facilities was financed is subject to criticism, and the Cemetery Board as well as the Attorney-General are to be commended for acting to protect the trust funds and the public interest represented therein. To date no loss has been occasioned and, therefore, any application to surcharge trustees and officers is premature. Moreover, because of the institution and resolution of this proceeding it seems highly unlikely that any impairment of the trust funds will result in the future. Accordingly, the petition is dismissed as against the individual respondents, and the petition is dismissed as to the respondents Erie County Savings Bank and Marine Midland Trust Company of Western New York as moot.
The petition is granted against the respondent Western Savings Bank to the extent set forth above in this memorandum opinion.