■ In the Matter of MEMORY GARDENS, INC., Respondent. CEMETERY BOARD OF THE STATE OF NEW YORK, Appellant. — Appeal from an order of the Supreme Court at Special Term (Kahn, J.), entered November 25, 1981 in Albany County, which granted petitioner's application, in a proceeding pursuant to section 1507 (subd [a], par [2]) of the Not-For-Profit Corporation Law, to withdraw moneys from its permanent maintenance fund to pay attorneys' fees and disbursements. This proceeding, initiated by petitioner Memory Gardens, Inc., and unsuccessfully opposed by the Cemetery Board of the State of New York, was instituted to enable petitioner to obtain authorization to invade its permanent maintenance trust fund for the purpose of defraying current legal fees and expenses of some $31,000, incurred during several legal proceedings. Petitioner also sought permission to repay this sum in ten equal, yearly, interest free, installments. The board maintains that allowing this fund to be invaded to discharge expenditures of this nature runs counter to and jeopardizes the legislative goal underlying enactment of section 1507 (subd [a], par [2]) of the Not-For-Profit Corporation Law. Section 1507 requires every cemetery corporation to establish a permanent maintenance trust fund "[f]or the sole purpose" of maintaining and preserving the cemetery, "including all lots, plots and parts thereof". On each and every sale of a lot or plot the cemetery corporation is required to deposit at least 10% of the sale amount into the permanent maintenance fund. The statute dictates that: "The principal of such fund shall remain inviolate, except that upon application to the supreme court in a district where a portion of the cemetery grounds is located, the court may make an order permitting the principal or a part thereof to be used for the purpose of current maintenance and preservation of the cemetery or otherwise" (Not-For-Profit Corporation Law, § 1507, subd [a], par [2]). In urging that Special Term's order was a permissible exercise of discretion, petitioner emphasizes the phrase "or otherwise", claiming that these words justify payment from the fund of those legal fees and costs generated in the course of preserving the cemetery corporation. We cannot agree. This case is a useful paradigm of the application of one of the basic tenets of statutory construction — the rule of *ejusdem generis*. This common-law doctrine has been described as follows: "where words of specific or inevitable purport are followed by words of general import, the application of the last phrase is generally confined to the subject matter disclosed in the phrases with which it is connected; for it is known by the company it keeps; and though it might be capable of a wider significance if found alone, it is limited in its effect by the words to which it is an adjunct. It may strengthen the general structure, but it cannot exceed the original outline" (McKinney's Cons Laws of NY, Book 1, Statutes, § 239, subd b, quoted in *Schulman v People*, 10 NY2d 249, 256). It is also noteworthy that the word "otherwise" when used as a general phrase following an enumeration of particulars is commonly interpreted in a restricted sense to include only matters " 'kindred to the classes before mentioned' " (*Daly v Haight,* 170 App Div 469, 473, affd 224 NY 726; see, also, *Matter of Koner v Procaccino,* 45 AD2d 551, 553, affd 39 NY2d 258). These principles make it apparent that in the circumstances presented, invading the permanent maintenance trust fund to satisfy the fees and expenses of the corporation now operating the cemetery is not tolerable. "[O]r otherwise" is limited by "current maintenance and preservation of the cemetery"; thus, any encroachment upon the fund must be justified by proof that the money being sought will directly prevent extinction of the cemetery itself. Additional language in the statute declaring that the

"sole purpose" of the fund (to be established by the cemetery corporation) is the maintenance and preservation of the cemetery, including all lots, plots, and parts thereof, lends further substance to the conclusion that it is the continued maintenance of the grounds and capital plant, not the continued viability of the cemetery corporation, which section 1507 was intended to ensure (see *Cemetery Bd. of State of N. Y. v Buffalo Cemetery Assn.*, 67 Misc 2d 949, 953). The legislative history also bears this out; it reveals that the statute was enacted following an Attorney-General's report deploring dilapidated conditions of the State's cemeteries (Report of the Attorney-General on the Subject of Cemeteries, NY Legis Doc, 1949, No. 7). Permanent maintenance funds were evidently to endure beyond the time when the cemetery was full or the operating corporation became defunct; arguably they were established to prevent the burden of maintaining the cemetery's physical plant from devolving upon the public. We do not mean to suggest that a recovery of legal fees is precluded in all instances. Where a strong link obtains between the moneys sought and actual physical maintenance or preservation of the cemetery's grounds or capital plant, intrusion upon the trust fund is statutorily acceptable. But here, there is no such bond; counsel fees and costs were engendered by rate hearings before the board, resistance to a Freedom of Information Act request, and the defense of wage and employment discrimination suits. None of these can seriously be said to have been occasioned by a necessity to husband the cemetery proper, rather than to protect the vitality of the cemetery corporation. The notion that increased rates were essential to keep up proper maintenance ignores the fact that the permanent maintenance fund was legislated to guard cemetery grounds from deterioration when the cemetery corporation encountered financial straits. Allowing a cemetery corporation to resort to that fund to resolve its corporate financial difficulties would render inoperative the very safeguard the statute endeavored to erect. Furthermore, while we do not reach the question of whether a compelling need must be shown to warrant an invasion of the permanent maintenance fund, here we note that the record indicates a projected operating surplus for petitioner of over $93,000 as of August 1, 1982. Nor is the fact that petitioner has promised to repay the fund relevant. In enacting section 1507, the Legislature was doing more than establishing a "rainy day fund" for cemetery corporations; it was assuring that cemetery grounds would be kept up without burdening the public fisc. Order reversed, on the law, without costs, and petition dismissed. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Levine, JJ., concur.