Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/19/2019 09:05 AM CDT

- 954 -

**Nebraska Supreme Court Advance Sheets
302 Nebraska Reports**
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

In re Trust known as the Maintenance Fund of the
Sunset Memorial Park Chapel Mausoleum
Company of Scottsbluff, Nebraska.
Bank of the West, formerly known as The Guardian
State Bank and Trust Co., Trustee, appellee and
cross-appellant, v. Sunset Memorial Park
Cemetery Association, Inc., and Myrtle
Hughbanks, interested parties,
appellants and cross-appellees.

___ N.W.2d ___

Filed April 19, 2019.    No. S-18-517.

1. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.
2. **Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court.
3. **Trusts: Equity: Appeal and Error.** Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record.
4. **Decedents' Estates: Trusts: Equity: Appeal and Error.** The removal of a trustee is a question of equity, and therefore an appellate court reviews de novo the question of whether a trustee was properly removed.
5. **Standing: Words and Phrases.** Standing is the legal or equitable right, title, or interest in the subject matter of the controversy.
6. **Jurisdiction: Standing.** The requirement of standing is fundamental to a court's exercise of jurisdiction, and either a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding.

- 955 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

7. **Standing: Jurisdiction: Proof.** A party invoking a court's or tribunal's jurisdiction bears the burden of establishing the elements of standing.

8. **Standing: Jurisdiction.** Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.

9. **Standing: Claims: Parties.** To have standing, a litigant must assert the litigant's own rights and interests, and cannot rest a claim on the legal rights or interests of third parties.

10. **Trusts.** In the case of a special purpose trust, trustees cannot on their own decide that carrying out the trust as originally planned has become impossible or inexpedient.

11. **Trusts: Fees.** A trustee will generally not be allowed to resign if the terms of the trust agreement, agreed to by the settlor and trustee, became inadequate according to the present market value of a trustee's services.

Appeal from the County Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellants.

John A. Selzer, of Simmons Olsen Law Firm, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG JJ.

MILLER-LERMAN, J.
NATURE OF CASE

Bank of the West, formerly known as The Guardian State Bank and Trust Co. (Trustee), as trustee for a trust fund created for the perpetual care and maintenance of the Sunset Memorial Park Mausoleum, petitioned the county court for Scotts Bluff County to resign as trustee; to be paid trustee fees, expenses, and attorney fees; and to terminate the perpetual care trust due to circumstances not anticipated at the time the trust was created. Several objectors opposed terminating the trust, including

- 956 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

Myrtle Hughbanks, a person who owns a crypt in the mausoleum, and Sunset Memorial Park Cemetery Association, Inc. (Cemetery Association), a nonprofit corporation that owns and operates the surrounding cemetery in which the mausoleum is located. The county court found that the Cemetery Association lacked standing and accepted the resignation of the Trustee. The county court ordered the Trustee to pay trustee fees, attorney fees, costs, and expenses incurred during the prosecution of the petition, which payments would exhaust the balance of the trust fund. The county court denied both parties' motions for attorney fees, and its order did not provide for future trust management. The Cemetery Association and Hughbanks appealed, and the Trustee cross-appealed. We determine that in addition to Hughbanks, the Cemetery Association possesses standing, and that the county court's ruling to the contrary was error. Further, because of the perpetual nature of a mausoleum trust, it was error to grant the Trustee's request for resignation and discharge without the Trustee's having identified and requested the appointment of a successor trustee. Accordingly, we affirm the county court's denial of the parties' motions for attorney fees, but we reverse the order of discharge and associated award of fees and remand the cause for further proceedings.

## STATEMENT OF FACTS

The issues in this case must be decided by reference to the mausoleum-related statutes and the Trust agreement. The statutes are found at Neb. Rev. Stat. § 12-601 et seq. (Reissue 2012) and include the following language applicable to this case.

Section 12-613 provides:

It shall be unlawful for any person, firm, partnership, limited liability company, corporation, or association to sell, transfer, or assign any niche or crypt in a columbarium or mausoleum without establishing a trust fund for the perpetual care and maintenance of such columbarium

- 957 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

or mausoleum as provided by sections 12-603 and 12-606 to 12-618.

Section 12-614 provides in part:

Any person, partnership, limited liability company, firm, corporation, or association which sells, assigns, or transfers any crypt or niche in a mausoleum or columbarium shall set aside a sum of not less than fifty dollars for each crypt and not less than twenty-five dollars for each niche or ten percent of the sale price of each crypt or niche whichever sum is the greater.

Section 12-616 provides:

The truste or trustees [of the trust fund] shall have the authority to receive gifts or bequests of money and other personal property and devises of real estate and any interest therein, to be placed in the perpetual care fund. The principal of the perpetual care fund shall be forever held inviolate as a perpetual trust, by said trustee or trustees, and shall be maintained separate and distinct from any other funds. The principal of the perpetual care fund shall be invested and, from time to time, reinvested and kept invested in securities, authorized by the State of Nebraska, for the investment of trust funds, and the income earned therefrom shall be used solely for the general care, maintenance, and embellishment of the mausoleum or columbarium, and shall be applied in such manner as the person or persons owning or operating the mausoleum or columbarium may, from time to time, determine to be for the best interests of such mausoleum or columbarium.

Where relevant, we view these specific mausoleum statutes as controlling our trust analysis. See Neb. Rev. Stat. § 30-3835 (Reissue 2016).

This case concerns a perpetual care and maintenance trust fund known as the Maintenance Fund of the Sunset Memorial Park Chapel Mausoleum Company of Scottsbluff, Nebraska (Trust), associated with the Sunset Memorial Park Mausoleum

- 958 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

in Scotts Bluff County, Nebraska. The Sunset Memorial Park Chapel Mausoleum Company (Mausoleum Company) was created in 1976 as a mausoleum association established as a private corporation under the provisions of § 12-601 et seq. In 1978, the Mausoleum Company acquired property and built the mausoleum building. The mausoleum is located in the Sunset Memorial Park Cemetery. The record suggests that ideally, the Mausoleum Company would manage and care for the mausoleum building.

*The Trust.*

As required by statute, the Trust was established for the perpetual care and maintenance of the mausoleum. See §§ 12-613 to 12-616. On March 28, 1980, the Trust was executed between the Mausoleum Company and The Guardian State Bank and Trust Co. The Trust agreement provides that the trustee includes not only "THE GUARDIAN STATE BANK AND TRUST CO., of Alliance, Nebraska . . . but also any successor, legal merger, or assignees thereof."

Several portions of the Trust agreement, reflecting compliance with the mausoleum statutes, are relevant to the issues considered at trial. The Trust agreement provides for a "SEPARATE PERPETUAL CARE TRUST" account kept apart from other funds, "to be forever conserved for the perpetual maintenance of [the] mausoleum." See § 12-613. It provided that the principal of the Trust "shall be forever held inviolate as a perpetual trust, by the TRUSTEE." See § 12-616. Income earned from investments "shall be used solely for the general care, maintenance, and embellishment of the mausoleum." The Trust agreement required the Trustee to pay the net income from the Trust semiannually to the "person, firm or corporation, who shall be lawfully in actual possession, management, and operation of said mausoleum at the time a particular semiannual payment is due."

Under paragraph 2(b) of the Trust agreement, the trustee shall be "a disinterested trust company organized to do business

- 959 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

in the State of Nebraska." The trustee "shall derive its authority and be selected by, the officers of the cemetery association, in which [the Mausoleum Company] is a part, namely [the] Cemetery Association." Paragraph 12 of the Trust agreement provides, in part, that the trustee may resign and discharge itself of the duties and obligations of a trustee by applying to the court for the appointment of a successor trustee.

Accounting records show that in 1980, the Trust was seeded with a $5,000 bond contributed by the Mausoleum Company. The total principal contributed to the Trust from the sale of niches and crypts or as a gift, devise, or bequest is approximately $7,500.

*Mausoleum Decline.*

Shortly after the construction of the mausoleum, the Mausoleum Company took on debt which it was ultimately unable to pay. The Mausoleum Company was forced to replace all but one of its trustees, and a company from outside of the community took control of the Mausoleum Company in an unsuccessful effort to satisfy the debt. The appointed trustees continued to operate the Mausoleum Company to a point after 1990, and thereafter, the Mausoleum Company became inactive. By 2001, several of the officers who had been in control of the Mausoleum Company were deceased. The accountings of the Trustee show that the last distribution of income to the Mausoleum Company was in 1998 and represented the balance of the 1997 income of the Trust. The Trustee has made no distributions to the Mausoleum Company since 1998. Although the evidence establishes that the Mausoleum Company has not been active since July 1, 1998, the Trust remains in existence.

A new mausoleum association was formed in 1993 in an attempt to access the Trust funds, but the new association could not show it was the legal successor to the Mausoleum Company and was unable to acquire ownership of the mausoleum.

- 960 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

Over the years, the administration of the Trust moved from one banking entity to another due to name changes and mergers, and it appears undisputed that Bank of the West is now serving as Trustee. In recent years, the income from the Trust has been insufficient to cover the Trustee's fees and other expenses, and the value of the Trust account has declined. A trust officer of the Trustee testified that in his opinion, the value of the Trust did not justify the cost of administering the Trust and that if the Trust was allowed to continue, it would continue to decline in value. The trust officer also testified that in his opinion, no other entity would accept the trusteeship of the Trust under the present circumstances.

The county court found, and the evidence supports, that the mausoleum property was not actively managed and that over time, the condition of the mausoleum building deteriorated from lack of care and maintenance.

*Proceedings to Terminate the Trust.*

In 2017, the Trustee filed a petition to terminate the Trust due to circumstances not anticipated at the time of the creation of the Trust. The petition alleged that the mausoleum was abandoned. The Trustee sought authorization from the court for the Trust to pay trustee fees, tax preparation expenses, and attorney fees. The petition suggested that the Trustee be allowed to transfer the remaining assets of the Trust to Scotts Bluff County, Nebraska.

An answer to the petition was filed by the Cemetery Association that owns and operates the cemetery in which the mausoleum building was constructed. The Cemetery Association appeared and asserted it had standing because, inter alia, the Trust agreement provides in paragraph 2 that it selects the Trustee and has served as caretaker of the mausoleum. For completeness, we note that the Cemetery Association claims to be the same entity as the Sunset Memorial Park Cemetery Association, the latter of which is named in the Trust agreement and of which the mausoleum is said to be "a part."

- 961 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

The Cemetery Association asserted various objections and affirmative defenses. The Cemetery Association alleged, summarized and restated, that the Trustee violated the Trust and Nebraska statutes in various ways and that the Trustee allowed niches and crypts to be sold in the mausoleum without recovering money from those sales for the Trust fund. It objected to transferring the trust funds to Scotts Bluff County.

Hughbanks also appeared in the case. She appeared for herself as a person who owns a crypt in the mausoleum and for her late husband who was entombed there after his death in 1993. According to the purchase agreement, the purchase price of the crypt included funds necessary for a perpetual care trust fund. In this regard, we note that paragraph 2(a) of the Trust agreement provides that the greater of $50 or 10 percent of the sale price of each crypt shall be set aside to the Trust fund, as required by statute. See § 12-614. Hughbanks testified that she has been active in the Cemetery Association and was an officer of the 1993 association, but that the 1993 association was not able to acquire the control of the mausoleum. Hughbanks testified that she did not agree with any action which would deplete the Trust and did not agree to terminating the Trust or transferring it to Scotts Bluff County.

Following a trial, the county court determined that the Cemetery Association lacked standing to object to the Trustee's petition. The court reasoned that the Cemetery Association did not have a legal interest in the Trust and was merely an adjacent landowner. Nonetheless, the county court reviewed the Cemetery Association's claims and found them to be without merit.

With regard to the Trustee's petition, the county court found that "[t]here does not appear to be anything preventing the Trustee from resigning and becoming discharged." It stated that "the court finds the Trustee's request for discharge is granted." It further stated that the "Trustee shall retain authority to pay . . . fees, costs, and expenses from the trust property." It found that based on the Trustee's evidence, attorney fees and

- 962 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

expenses for the prosecution of the petition were fair and reasonable. The court otherwise denied both parties' motions to assess attorney fees, costs, and expenses incurred in defending the others' claims. The court stated that "[b]ased upon the current Trust accounting and the above expenses there will not be any funds remaining in the trust" and concluded that the court need not appoint future trust management. The court denied the Trustee's petition to terminate the Trust. The court ordered that the Trustee will be discharged upon filing a final accounting of the payments and disbursements.

The Cemetery Association and Hughbanks appealed, and the Trustee cross-appealed.

## ASSIGNMENTS OF ERROR

The Cemetery Association and Hughbanks claim, summarized and restated, that the county court erred (1) when it found that the Cemetery Association lacked standing and (2) and when it directed the Trustee to disburse "inviolate" funds to itself from the principal of the Trust.

The Trustee assigns in its cross-appeal that the county court erred when it failed to (1) order the Cemetery Association to pay the Trustee's attorney fees, costs, and expenses; (2) provide for future trust management; and (3) terminate the Trust.

## STANDARDS OF REVIEW

[1,2] Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018). The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court. *Id*.

[3,4] Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record. *In re Henry B. Wilson, Jr., Revocable Trust*, 300 Neb. 455, 915 N.W.2d 50 (2018).

- 963 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

The removal of a trustee is a question of equity, and therefore an appellate court reviews de novo the question of whether a trustee was properly removed. *Id*.

## ANALYSIS

*Standing.*

The county court concluded that the Cemetery Association lacked standing. Because our review of the record shows the Cemetery Association possessed a legal interest in the proceedings under the Trust document, we conclude that the Cemetery Association had standing and that the county court's conclusion to the contrary was error as a matter of law.

[5-9] Standing is the legal or equitable right, title, or interest in the subject matter of the controversy. *Wisner v. Vandelay Investments, supra*. The requirement of standing is fundamental to a court's exercise of jurisdiction, and either a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding. *Id*. A party invoking a court's or tribunal's jurisdiction bears the burden of establishing the elements of standing. *Id*. Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf. *Eagle Partners v. Rook*, 301 Neb. 947, 921 N.W.2d 98 (2018). Thus, generally, a litigant must assert the litigant's own rights and interests, and cannot rest a claim on the legal rights or interests of third parties. See *id*.

Under the Trust agreement, the legal relationship between the Cemetery Association and the Mausoleum Company is intertwined and consistent with the statutory framework establishing mausoleum perpetual care trusts. Under the Trust agreement, the officers of the entity now known as the Cemetery Association select the trustee. Paragraph 2(b) of the Trust provides that the trustee "shall derive its authority and be selected by, the officers of the [C]emetery [A]ssociation, in which [the Mausoleum Company] is a part, namely Sunset Memorial Park

- 964 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

Cemetery Association." This provision mirrors § 12-615(2), which provides that "[t]he trustee or trustees [of the mausoleum perpetual care trust], as the case may be, shall be selected by the officers of the cemetery association." The Cemetery Association established that it is effectively the successor to the originally established association and that therefore, it has the authority to select the trustee.

The Trustee's petition concerns its resignation as the trustee, and implicates the selection of a new trustee. The petition raises the issue of the potential termination of the Trust itself and, given its allegation of abandonment, the potential reversion to Scotts Bluff County. See Neb. Rev. Stat. § 12-701(1) (Reissue 2012) (providing upon abandonment of mausoleum "[t]he ownership of or right in or to an unoccupied cemetery lot or part of a lot in any cemetery in the state shall . . . revert to the city, village, township, or cemetery association having the ownership and charge of the cemetery containing such lot or part of a lot"). The Cemetery Association has a legal interest in these matters under the Trust agreement and, accordingly, has standing in this case.

Other facts also support our conclusion that the Cemetery Association has standing. The mausoleum is located in the midst of the cemetery, as required by statute. See § 12-606. In the absence of active management of the mausoleum by the Mausoleum Company, the Cemetery Association's agents performed maintenance in and around the mausoleum, as the county court acknowledged. The threat of reversion concerns the Cemetery Association.

The Cemetery Association, responsible for the cemetery, is acting in its own interest and is not merely an actor in the "'public interest'" as asserted by the county court and the Trustee. See *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996). Accordingly, the Cemetery Association established standing to assert its various arguments in the county court and on appeal. The county court erred when it concluded otherwise.

- 965 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

*Resignation of Trustee.*

The Trustee's petition sought an order approving the accounting of the Trustee, discharging it as trustee, and seeking termination of the Trust. As we explain below, the county court erred when it effected the discharge of the Trustee without meeting the terms of paragraph 12 of the Trust agreement requiring consideration and evaluation of appointment of a successor trustee.

The trust at issue in this case is a trust for a specific noncharitable purpose, i.e., care of the mausoleum, and is subject to the mausoleum-related statutes noted above. See Unif. Trust Code § 409, comment, 7D U.L.A. 152-53 (2018). The statutes applicable to this special purpose trust endeavor to facilitate "perpetual care" as opposed to care for a period of years. *Id*. at 153. See §§ 12-613 and 12-616. We take seriously these expressions of the Legislature's intentions to the effect that the structure of the Trust fund be preserved. The terms of the Trust agreement reflect these objectives.

Resignation of a trustee was contemplated by the Trust agreement. Under paragraph 12, a trustee seeking to be discharged from its duties as trustee for the Trust must "apply to [the applicable court] for the appointment of a successor trustee." The nature of the Trust, expressed in this language of the Trust agreement and in the special statutory framework by which it was created, requires that a perpetual care trust have a trustee. See § 12-615. We read paragraph 12 to require consideration of an identifiable successor trustee before a current trustee may resign from its duties. Allowing a trustee to resign without securing a successor trustee or otherwise providing for future management is contrary to the intent of the settlors of the Trust and § 12-615; such disposition is inconsistent with the notion that reasonable steps must be taken to ensure perpetual care. See §§ 12-613 and 12-616.

[10,11] It is generally understood, and we agree, that in the case of a special purpose trust, trustees cannot on their own decide that carrying out the trust as originally planned

- 966 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

has become impossible or inexpedient. See George Gleason Bogert & George Taylor Bogert, Trusts and Trustees § 435 (rev. 2d ed. 1991). We find supporting case law for the proposition that a trustee will generally not be allowed to resign if the terms of the trust agreement, agreed to by the settlor and trustee, became inadequate according to the present market value of a trustee's services. See, *In re Loree*, 24 N.J. Super. 604, 95 A.2d 435 (Ch. Div. 1953); *Town of Cody v. Buffalo Bill Mem.*, 64 Wyo. 468, 196 P.2d 369 (1948); *Empire Trust Co. v. Sample*, 50 N.Y.S.2d 5 (Sup. 1944); Bogert & Bogert, *supra*, § 515 (rev. 2d ed. 1978). Although in recent years the income from the Trust no longer covered or exceeded the Trustee's expenses, the Trustee had accepted the duty of administering the Trust with full knowledge of the situation and the nature of an inviolate fund and voluntarily assumed the duties and obligations of a trustee. The Trust indisputably has a lawful, statutorily authorized purpose, and the county court must determine how it could continue to serve that purpose. See § 12-613.

The Trustee did not fully comply with paragraph 12 of the Trust. Under the circumstances of this case and based on the Trust agreement language, the county court abused its discretion when it allowed the Trustee to resign, without providing for a successor trustee or future management.

It follows that the county court erred when it awarded the Trustee "costs, fees, and expenses incurred as a result of litigation." Under the circumstances of this case, litigation costs incurred by the Trustee's seeking to be discharged in a manner inconsistent with paragraph 12 of the Trust should not have been awarded, nor should the Trustee have been paid from the inviolate Trust. See *Matter of Memory Gardens*, 91 A.D.2d 1163, 458 N.Y.S.2d 737 (1983). We find no error in the denial of awards for attorney fees, but set aside all other orders of the county court raised in this appeal. In view of our disposition of the controlling questions, the issues raised by the Trustee's cross-appeals are moot or without merit.

- 967 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE MAINT. FUND TRUST OF SUNSET MEM. PARK CHAPEL
Cite as 302 Neb. 954

## CONCLUSION

For the reasons explained above, we conclude that the Cemetery Association had standing to assert claims in the county court and on appeal and that the county court erred when it accepted the resignation of the Trustee. The orders of the county court denying attorney fees were not erroneous, but we set aside all other orders of the county court raised in this appeal. We affirm in part, and in part reverse the order and remand the cause for further proceedings consistent with this opinion.

Affirmed in part, and in part reversed and remanded for further proceedings.