31 N.J. Super. 95 (1953)
106 A.2d 36
HARRY BEHRMAN, JOHN J. HALL, ALOYSIUS J. O'BRIEN, AMOS H. RADCLIFFE AND CHARLES H. ROEMER, TRUSTEES UNDER A TRUST AGREEMENT DATED DECEMBER 26, 1934, BETWEEN THEM AND THE FRANKLIN TRUST COMPANY OF PATERSON, PLAINTIFFS,
v.
JOHN J. EGAN AND GEORGE LENDRIM, AS REPRESENTATIVES OF THE HOLDERS OF CLASS "A" CERTIFICATES; AND WILLIAM E. BROWNE AND MOSES I. FULD, AS REPRESENTATIVES OF THE HOLDERS OF CLASS "B" CERTIFICATES, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 22, 1953.
*97 Messrs. Randal B. Lewis, Walter D. Van Riper, William W. Evans, Samuel Rochlin, attorneys for the plaintiffs.
Mr. Walter J. Hunziker, attorney for defendants Egan and Lendrim.
Mr. Vincent C. Duffy, attorney for defendants Browne and Fuld.
Messrs. Herman H. Singer and Albert S. Gross, attorneys for estates of James M. O'Dea, et al.
Messrs. Samuel Kaufman and Sanford Freedman, attorneys for certificate holders, exceptants to the account (and of counsel).
Mr. George F. Miller, attorney for estate of Joseph Teshon, et al.
Messrs. Frankel & Frankel, attorneys for intervenor Nathan Metzger.
GRIMSHAW, J.S.C.
At long last we have come to the end of the road so far as the trial court is concerned. The settlement of the form of judgment, like every other phase of the litigation, has been fraught with difficulty. I am not particularly concerned with phraseology but there were points raised in the arguments of counsel which require an expression of my opinion.
The exceptants sought the removal of the remaining trustees. I required the resignation of Mr. Roemer but did not remove Mr. O'Brien and Mr. Hall, for reasons heretofore stated. I have not changed my mind on that point.
We are faced with the question as to how the vacancies occasioned by the removal of Mr. Roemer, the resignation of Mr. Behrman and the death of Mr. Radcliffe shall be filled. The surviving trustees contend that under the trust agreement the right to elect the successor trustees is theirs. The exceptants insist that the court must make the appointments.
*98 Since the argument I have received a letter from counsel for the trustees, informing me of their willingness to fill the vacancies with men of my choice. That being so, the manner in which the trustees are appointed becomes unimportant. I have chosen William H. Dillistin, C. Wesley Bensen and John T. Deighton to fill the vacancies. The surviving trustees having indicated their willingness to elect these gentlemen, I am content to have them do so. The successor trustees shall each furnish a bond of $25,000.
At the close of the main hearings the trustees were given an opportunity to justify as reasonable, payments totalling $35,000 to the Franklin Trust Company for service charges for the years 1935 to 1938, inclusive. No record of the services rendered nor of the time spent in work for the trust estate was kept. The payments were in arbitrary amounts. In an effort to justify the payments made, the accountant, admittedly after the fact, prepared a schedule showing salaries paid to each of the employees of the bank, together with an estimate of the time spent by each employee on work pertaining to the trust estate. On that basis, salaries of employees in the amount of $27,644.46 were charged to the trust. Of that amount, $7,115 represented 50% of the salary of Mr. Bergen, who was one of the trustees. That charge, in my opinion, was without justification. The balance of $20,529.46 appears to be reasonable.
The schedule of charges lists various other expenses, of which a portion was charged against the trustees. None of those expenses could be considered a proper charge against the trust and will not be allowed.
The trustees argue that it would be harsh and inequitable to make a surcharge because of excessive payments to the Franklin Trust Company. First, because there was no conscious wrongdoing on the part of the trustees, and, second, because any payments made to the Franklin Trust Company inured to the benefit of the trust, which was the holder of the majority of the stock of the trust company.
As to the first argument the situation in which the trustees found themselves was entirely of their own making. *99 Had this trust been administered in the customary manner and with the care which is required of trustees in this State, the judgment with which the trustees are now faced could have been avoided. It would have been a simple matter during the years in question for the trustees to have received, from the Franklin Trust Company, statements of charges which could have been retained and presented with the account as justification for payments the reasonableness of which must now, because of their carelessness, be made the subject of speculation. As to the second point, the argument might have some force if the trustees were the holders of all of the stock of the bank, but they are not.
The accountants presented a bill for $26,278.50. I do not question the fact that the charge is reasonable for the work done. However, $4,547 was for services in preparing an accounting which was totally inadequate and without justification under the rules. The fault did not lie with the accountants. They did what they were told to do. Their instructions came from the surviving trustees, who must bear the expense of the unnecessary and wholly inadequate work. However, since some of the information obtained was used in the preparation of the subsequent account, the entire amount will not be disallowed. The testimony also revealed that the delay in rendering an accounting occasioned an additional cost of from 10 to 30%. This expense the trustees must bear.
Accounting fees in the amount of $7,000 will be disallowed.
Finally there remains the question of counsel fees. That there is a fund in court from which allowances can be made is not open to question. In re Koretzky's Estate, 8 N.J. 506 (1951). But the amount of the allowances to be granted has caused me no little concern. Equally troublesome has been the question as to whether any reimbursement should be made to the trustees for the cost of defending their administration of the trust estate.
On the first point, it is obvious that counsel cannot hope to be compensated adequately for their services out of the trust fund. The preparation and trial of a case of this character *100 demands of those in charge many hours of work. A number of attorneys, representing various interests, participated in the trial and spent long hours in preparation. To a considerable degree their work represents a duplication of effort. The allowances sought are in excess of $100,000. To grant them would in a large measure nullify the results obtained and leave the beneficiaries with a Pyrrhic victory.
The exceptants contend that no counsel fee should be allowed to the trustees since the trial resulted in the imposition of large surcharges against them. I am mindful of the rule that an adjudication that trustees have been guilty of wrongdoing precludes them from obtaining reimbursement for the expenses of administering the trust. Solimine v. Hollander, 129 N.J. Eq. 264 (Ch. 1941); Schindel v. Brenauer, 136 N.J. Eq. 94 (E. & A. 1944). But where the surcharges against the trustees do not result from actual fraud or active misconduct, the rule is not applied so strictly. Bankers Trust Co. v. Bacot, 6 N.J. 426 (1951).
The original trustees, or their estates, are not entitled to reimbursement for the expense of defending the administration of the trust. Messrs. O'Brien and Hall, on the other hand, are in a different position. No misconduct or active wrongdoing has been charged against them and they, it seems to me, are entitled to reimbursement to some degree at least, for the expenses of their defense. The trustees will be allowed reimbursement for legal expenses incurred in the amount of $10,000.
Having in mind the extent of the interests represented and the services rendered, I will allow counsel fees to the exceptants as follows:

 Samuel Kaufman $10,000
 Albert S. Gross 5,000
 Herman H. Singer 5,000
 George F. Miller 3,000
 Vincent C. Duffy 1,200
 Walter J. Hunziker 1,200
 Leopold Frankel 1,000

*101 Disbursements will be allowed with the exception of those incurred in connection with the interlocutory appeal of the intervenor Metzger.
The judgment will include the foregoing items together with interest on the surcharges at the rate of 3 per cent.