HARRY BEHRMAN, *ET AL.*, TRUSTEES UNDER A TRUST AGREEMENT DATED DECEMBER 26, 1934, BETWEEN THEM AND THE FRANKLIN TRUST COMPANY OF PATERSON, PLAINTIFFS-APPELLANTS, v. JOHN J. EGAN AND GEORGE LENDRIM, AS REPRESENTATIVES OF THE HOLDERS OF CLASS "A" CERTIFICATES; AND WILLIAM E. BROWNE AND MOSES I. FULD, AS REPRESENTATIVES OF THE HOLDERS OF CLASS "B" CERTIFICATES, DEFENDANTS-RESPONDENTS.

Argued June 7, 1954—Decided June 28, 1954.

*Mr. William W. Evans* argued the cause for the appellants (*Messrs. Evans, Hand and Evans,* attorneys).

*Mr. Samuel Kaufman* argued the cause for the respondent Catherine Mohlengraf *et al.* (*Messrs. Bilder, Bilder & Kaufman,* attorneys; *Mr. John M. Kaufman* on the brief).

*Mr. George F. Miller* argued the cause for the respondent intervenors (*Messrs. Frankel & Frankel* and *Mr. Herman H. Singer,* attorneys).

*Mr. Albert S. Gross* argued the cause for the respondents, Egan, Lendrim, Browne and Fuld (*Mr. Walter J. Hunziker* and *Mr. Vincent C. Duffy,* attorneys).

*Mr. Hugh C. Spernow* argued the cause for the respondents Wiley, Block & White.

PER CURIAM. For the reasons expressed by Judge Grimshaw in three opinions reported in 17 *N. J. Super.* 598 (*Ch. Div.* 1951), 25 *N. J. Super.* 109 (*Ch. Div.* 1953), and 31 *N. J. Super.* 95 (*Ch. Div.* 1953) (the last being dated July 22, 1953), the judgment below is affirmed except in the following particulars:

 (1) Paragraph 12 charges only a part of the accountants' bills to the trust estate. The retention of the accountants, however, was entirely proper, their services were clearly required by the trust estate and the amount of their bills is admittedly reasonable. They should not therefore be drawn into the controversy of the other parties in this litigation or forced to resort to a direct suit against the trustees for that portion of their bills for which the trustees should be surcharged. Accordingly, paragraph 12 is amended to provide that the accountants' total bill of $26,278.50 shall be a charge against the trust estate.

(2) In its opinion filed July 22, 1953 the trial court stated:

"The accountants presented a bill for $26,278.50. I do not question the fact that the charge is reasonable for the work done. However, $4,547 was for services in preparing an accounting which was totally inadequate and without justification under the rules. The fault did not lie with the accountants. They did what they were told to do. Their instructions came from the surviving trustees, who must bear the expense of the unnecessary and wholly inadequate work. However, since some of the information obtained was used in the preparation of the subsequent account, the entire amount will not be disallowed. The testimony also revealed that the delay in rendering an accounting occasioned an additional cost of from 10 to 30%. This expense the trustees must bear.

Accounting fees in the amount of $7,000 will be disallowed."

In the judgment entered on this opinion, however, the original trustees (Harry Behrman, Charles H. Roemer, Charles A. Bergen, Hugo Huettig, and Amos H. Radcliffe) are surcharged $4,547 "for accounting services in connection with the filing of the first account." This obviously is inconsistent with the opinion above quoted and paragraph 5 of the judgment should be amended by striking subsection (j), and this amount should be charged to the present trustees (Harry Behrman, Charles H. Roemer, John J. Hall, and Aloysius J. O'Brien). The balance of the accounting surcharge of $7,000 (*i. e.*, $2,453) should be surcharged to all the trustees, past and present, since all are at fault in the matter.

(3) It has been argued that certain surcharges against the estates of Charles A. Bergen and Hugo Huettig are not justified, because they deal with matters arising after these trustees severed their relations with the trust. The record before us is insufficient for us to determine the matter in detail. Paragraph 7 and section (b) of paragraph 5 of the judgment should be reconsidered by the trial court to determine what, if any, surcharges arising out of the Herbert Katz transaction and the payment of fees to Charles H. Roemer by the trust resulted from breaches of trust committed after the termination of the duties of Charles A. Bergen and Hugo Huettig as trustees. Any such items erroneously charged against the estates of Charles A. Bergen and Hugo Huettig shall be properly surcharged to those trustees who are in fact liable.

The cause is remanded to the Chancery Division of the Superior Court for further proceedings in accordance with this opinion.

HEHER, J. (for modification). I read the contract as rendering the trustees liable for the consequences of fraud, bad faith, and inexcusable negligence in the administration of the trust, but not for errors of judgment and discretion. The contract provides in terms that a trustee shall be liable only "for his individual malfeasance." Technically, "malfeasance" is the wrongful or unjust doing of an act which one ought not to do at all, or which he has stipulated by contract not to do. But read in context, it would seem that the contractual exoneration was not intended to include gross or inexcusable negligence by the trustee in the performance of his fiduciary duty. This was a complex and difficult undertaking; and it is readily conceivable that there would be reluctance to accept the trust for a stipend that is little more than nominal, unless the trustees were relieved of accountability for fiduciary administration not attributable to an indubitable default of duty constituting conscious fraud or bad faith or negligence suggesting a knowing and willful

failure of primary duty akin to bad faith. The contract raised a liquidating trust; and the executor of such a trust may put reasonable limitations upon his duties and responsibilities, *N. J. S.* 3*A*:15–25; but public policy forbids that one assume a trust of this class and, while seeming to perform, willfully default in his primary obligation to conserve the trust *res.*

The judgment of the Superior Court is not ruled by this principle; and I would remand the cause for a reassessment of the trustees' liability in keeping with the contract. The charges of fraud and bad faith fall, in my view, for want of proof clearly and convincingly establishing moral default.

I would not disallow all compensation for legal services rendered the trust by Roemer and his associates. On the brief, respondents justify the surcharge as "in violation of the trust indenture." But that instrument, Article III, paragraph 2(h), 2(i), empowers the trustees "to hire * * * and pay the compensation of any agents, employees, accountants, counsel * * * in connection with the administration of their trust." True, it is also provided, Article III(13), that the trustees "shall not be entitled to any compensation for their services excepting reasonable attendance fees in an amount to be agreed upon and to be charged against the trust property." The attendance fee agreed upon was $10 per meeting; and it would plainly be in disregard of the spirit of the contract to hold that this clause excludes compensation for the specialized service thus given by Roemer and his law associates. This provision would seem to have reference to service as a trustee. The particular service was rendered to the trust; it was a necessary service; and it is acknowledged that the fees charged are entirely fair and reasonable. Indeed, on the oral argument counsel, conceding as much, maintained that "principle" forbids an allowance for this service—*i. e.,* the want of a prior specific authorization by the court for the rendition of the service. This sur-

charge unduly enriches the trust, for it absolves it of the obligation to pay the reasonable value of a necessary service actually rendered.

The same considerations are applicable to the surcharge for the payments made to the trustee Radcliffe for service as maintenance manager, requiring daily attendance and supervision, of the tenanted mill building at 80 George Street, in Paterson, an asset of the trust. And I find no justification for the surcharge of $5,000, covering the reduction made by the trustees in the contract price of $91,000 for the sale of this mill property. The vendee had refused to perform the contract, for alleged violations of Labor Department regulations; and to consummate the sale the trustees reduced the price rather than run the risk and expense of litigation. These were peculiarly matters within the province of the trustees; and, absent bad faith, the judgment is unexceptionable. The case made by respondents falls short of bad faith; it rests upon mere suspicion, surmise and conjecture.

This is also true of the surcharges in relation to the Hodge guardianship and the Bruera settlement.

And I find error in the direction that Roemer and O'Brien surrender to the trust the "A" certificates purchased by them, without reimbursement of the price of the certificates paid by them. These trustees seek no profit or gain for themselves individually; they merely ask for restitution of the sums actually paid by them for the certificates, in aid, they insist, of the due administration of the trust. There is no doubt that the purchase of these certificates benefited the trust; and the penalty thus imposed on the trustees unduly enriches the trust. The proofs do not support the thesis that in this regard the trustees were frauddoers.

I would not surcharge the trustees for the cost of preparing the summary of the account; and I would modify as excessive the surcharge for the cost attributable to the long delay in accounting. I concur in the holding of the majority that the whole of the accountants' fees for services are chargeable to the trust.

But the interest charge laid against the trustees is excessive, beyond that needed to make the trust whole.

And the foregoing considerations render insupportable the disallowance of the attendance fees.

I would modify the judgment accordingly, and remand the cause for a determination of the liability of the trustees on the remaining issues in keeping with these conclusions.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN—6.

*Opposed*—None.