NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2663-19

IN THE MATTER OF THE
GLORIA T. MANN
REVOCABLE TRUST.

_____

APPROVED FOR PUBLICATION

June 2, 2021

APPELLATE DIVISION

Argued January 26, 2021 – Decided June 2, 2021

Before Judges Gilson, Moynihan, and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000330-18.

William I. Strasser argued the cause for appellant (Strasser & Associates, PC, attorneys; William I. Strasser, of counsel and on the briefs; Maximilian Rich, on the briefs).

John M. Chakan argued the cause for respondent.

The opinion of the court was delivered by

MOYNIHAN, J.A.D.

Following the death of their mother, Gloria T. Mann (Gloria),[1] plaintiff

David Mann and defendant Doree Gottlieb became the primary beneficiaries

---

[1] Many of those involved in the Trust that is the subject matter of this appeal have the same surname, so, at times, we use given names for clarity. We mean no familiarity or disrespect by that practice.

and co-trustees of the Gloria T. Mann Revocable Trust. Plaintiff appeals from the trial court's order for judgment, entered following a three-day bench trial: dismissing his verified complaint against defendant with prejudice; ordering defendant to prepare an updated formal accounting and "be in a position to promptly distribute the assets to the [Trust's] beneficiaries" consistent with the trial court's written decision; and setting dates for defendant's application for counsel fees and plaintiff's response. Plaintiff also appeals from the court's subsequent order awarding defendant's counsel fees payable from Trust assets.

We glean the pertinent facts from the trial court's findings that "are binding on appeal [if] supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Our deference is particularly "appropriate when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997). We will not substitute our view of the trial evidence for that of the supported findings made by the trial court. In re Tr. Created by Agreement Dated Dec. 20, 1961, by & between Johnson & Hoffman, Lienhard & Perry, 399 N.J. Super. 237, 253 (App. Div. 2006), aff'd, 194 N.J. 276 (2008).

More than two months after their mother's passing on August 10, 2017, plaintiff and defendant signed a Legal Representation Agreement retaining Emanuel Haas to assist in administering the Trust. They then opened several

accounts at Oritani Bank for certain Trust assets; both co-trustees were co-signatories on the accounts. As a matter of course, Oritani personnel performed credit checks and judgment searches on the co-trustees that revealed four outstanding judgments against plaintiff that were over ten years old. The day after plaintiff met with Oritani's branch manager in mid-November 2017 to review the judgment search, plaintiff met with defendant and her husband. Plaintiff testified defendant expressed concern that the outstanding judgments would affect their ability to administer the Trust.

Shortly thereafter, defendant reiterated her concern to Haas during a meeting attended by the co-trustees and defendant's husband. At trial, plaintiff testified Haas "didn't say one way or the other" he should resign. Plaintiff testified he considered the age and amounts of the judgments, that they did not appear on his credit report and defendant's concern that "the judgment holders [could] freeze the [T]rust." He "wrapped it up by saying, if [defendant was] so afraid to have [him] listed as a co-trustee, then [Haas should] remove [his] name as co-trustee." Haas agreed to draft the documents to accomplish plaintiff's decision.

3

Two days later, on November 24, 2017,[2] plaintiff and defendant returned to Haas's office. Plaintiff signed a "Resignation of Trustee"; defendant signed an "Acknowledgment of Trustee Resignation." Both parties presented the resignation to Oritani and Valley National Bank, another depository of the Trust's funds, and defendant was thereafter designated as the sole trustee for Trust accounts at those banks.

Defendant's purported actions and inactions following that date eventually led to plaintiff filing a verified complaint on July 26, 2018, and subsequent amended verified complaint seeking: an order declaring him a trustee of the Trust; a full accounting of the actions taken by defendant as trustee; a return of all Trust and non-Trust property taken by defendant or any agent of defendant; compensatory, consequential, incidental, nominal and expectation damages; and lawful interest, attorney's fees and other equitable relief. We review plaintiff's claims of trial-court error:

> [I]. THE TRIAL COURT ERRED IN FINDING THAT [PLAINTIFF] RESIGNED AS TRUSTEE.
>
> [II]. THE TRIAL COURT ERRED IN ITS FAILURE TO AWARD [PLAINTIFF] ADEQUATE COMPENSATORY, PUNITIVE, AND EQUITABLE

---

[2] The trial court's written decision, at one point, sets the date as November 24, 2019. Considering the context of related events, the corresponding dates found by the court and the exhibits the court references, that was obviously a typographical error.

DAMAGES IN LIGHT OF [DEFENDANT'S] CONDUCT.

[A]. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT'S FAILURE TO INVEST OVER $700,000[] IN AVAILABLE LIQUID ASSETS WAS NOT A VIOLATION OF N.J.S.A. 3B:20-11.5 AND NEW JERSEY COMMON LAW.

[B]. WHILE THE TRIAL COURT FOUND THAT DEFENDANT ENGAGED IN SELF-DEALING BY DISTRIBUTING $37,000[] TO HERSELF WITHOUT OFFERING A SIMILAR DISTRIBUTION TO [PLAINTIFF] AND WITHOUT ADVISING [HAAS] OR [PLAINTIFF] OF THE DISTRIBUTION, THE TRIAL COURT FAILED TO AWARD SUFFICIENT DAMAGES.

[C]. THE TRIAL COURT ERRED IN ITS FAILURE TO FIND THAT . . . DEFENDANT FAILED TO KEEP [PLAINTIFF] ADVISED AS TO THE STATUS OF THE TRUST.

[D]. THE TRIAL COURT ERRED IN ITS FAILURE TO FIND THAT [DEFENDANT'S] REFUSAL TO MAKE ANY INTERIM DISTRIBUTIONS TO [PLAINTIFF] DID NOT VIOLATE HER DUTIES AS TRUSTEE AND CAUSED DAMAGE TO [PLAINTIFF].

[E]. THE TRIAL COURT ERRED IN FAILING TO FIND THAT [DEFENDANT'S] UNILATERAL ACTIONS TAKEN AFTER [PLAINTIFF] REVOKED HIS "DELEGATION" VIOLATED HER DUTIES AS CO-TRUSTEE.

[III]. THE TRIAL COURT ERRED IN FAILING TO AWARD SUFFICIENT COMPENSATORY DAMAGES AND PUNITIVE DAMAGES.

[IV]. THE COURT SHOULD ORDER THE TRUST TO PAY THE LEGAL FEES AND COSTS INCURRED BY [PLAINTIFF] IN CONNECTION WITH THIS ACTION AND ASSESS ALL SUCH FEES AGAINST DEFENDANT'S INTEREST IN THE TRUST.

[V]. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERS[I]BLE ERROR WHEN IT PROHIBITED [PLAINTIFF] FROM PRESENTING REBUTTAL WITNESSES.

According proper deference to supported trial-court findings and subjecting the trial court's application of those facts to the law to plenary review, see Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007), we find no error. Nor do we discern an abuse of discretion in the trial court's counsel-fee determination. See In re Est. of Bloomer, 43 N.J. Super. 414, 416 (App. Div. 1957). Consequently, we affirm.

I.

Plaintiff reprises the argument made to and rejected by the trial court that he did not resign as trustee but merely delegated his authority as permitted under Article IX, paragraph D of the Trust instrument. The trial court determined the evidence did not support that argument. We defer to that supported finding.

6                                                            A-2663-19

The Resignation of Trustee is unambiguous; plaintiff resigned as trustee by signing the document that provided:  "For reasons best known to me, I [, plaintiff,] hereby resign my position as [t]rustee of [the] Trust, effective immediately."  He did not designate anyone as a successor trustee as permitted in Article IX, paragraph B.  Nor did he delegate "any or all [T]rust authorities to any other co-trustee" as permitted in Article IX, paragraph D.

Despite the unambiguity of the Resignation of Trustee, the trial court properly considered extrinsic evidence.  See Atlantic N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301-02 (1953) (noting a trial court is permitted to rely on extrinsic evidence to aid in its interpretation of a document even when the document is not ambiguous on its face).  The judge found:  plaintiff, with defendant, presented his resignation to the banks "to be sure that he was removed as [c]o-[t]rustee on the accounts"; plaintiff testified "he did not communicate with [d]efendant regarding the Trust from late November 2017 until April 30, 2018"; and "[p]laintiff did not participate in any manner in administering the assets of the Trust."

The trial court's rejection of plaintiff's contention that he intended only to delegate his authority and its finding that plaintiff resigned are supported by the documentary evidence and plaintiff's own conduct after he executed the Resignation of Trustee.  Because there was "adequate, substantial, credible

7

evidence" in the record supporting the trial court's determination, that finding should be upheld on appeal. See Cesare, 154 N.J. at 411-12.

Plaintiff alternatively argues his resignation "was ineffective as [a matter of law because] the beneficiaries (Joshua Mann and [Aliya Mann]) were not notified" as required by N.J.S.A. 3B:31-50. Gloria had made specific provisions for those beneficiaries in the original Trust document and an amendment thereto, designating the funds held in an Oritani account that were to be divided equally between them upon her death.

For reasons unknown to us, the trial court did not address that issue. Nevertheless, we find no merit in plaintiff's argument.

"The general rule is that a trustee, having accepted a trust, may not through his own act alone divest himself of the office or of its responsibilities . . . in the absence of the [approval of the court or the] consent of the beneficiaries[.]" In re Loree's Tr. Est., 24 N.J. Super. 604, 609 (Ch. Div. 1953); see also In re Est. of Mild, 25 N.J. 467, 485 (1957) ("A fiduciary who has entered upon the administration of his duties cannot divest himself of his responsibility and gain his discharge by his own act of resigning."). Our Legislature codified that common law principle in N.J.S.A. 3B:31-50(a):

> A trustee may resign [his or her position]: (1) upon at least [thirty] days' notice to the qualified beneficiaries, the settlor, if living, all co-trustees, and the trustee or trustees, if any, designated pursuant to the terms of the

trust to succeed the resigning trustee; or (2) with the approval of the court.

That default statutory rule must yield to the intent of the settlor, see Zwoyer v. Hackensack Tr. Co., 61 N.J. Super. 9, 12, 16 (App. Div. 1960) (noting a court's primary purpose is to give effect to the testator's intent and the dominant scheme of the instrument, in that case a will containing a trust provision), and should be applied only in cases where the settlor did not explicitly contemplate trustee resignation in the trust instrument, see Loree's Tr. Est., 24 N.J. Super. at 606 (noting "[t]he agreement [made] no provision for the resignation of the trustee").  If the settlor addressed the issue of trustee resignation in the trust document, then the express terms of the trust prevail over N.J.S.A. 3B:31-50(a)'s default resignation requirements.  N.J.S.A. 3B:31-5(b) ("The terms of a trust prevail over any provision of this act[.]").

Here, the Trust specifically provided that if either trustee was "unable or unwilling to serve or to continue to serve, then the other shall serve as sole trustee[.]"  It further provided "[n]o [t]rustee shall be required to obtain the order of any court to exercise any power or discretion" under the Trust.  Not only did the Trust allow resignations, it provided for continuity of the Trust's administration if a trustee did resign.  Thus, there was no danger the Trust would be neglected.  Moreover, defendant, the only remaining trustee—and the only other primary beneficiary—was on notice of plaintiff's resignation.

A-2663-19

We also note, under the Trust amendment, Joshua and Aliya were to receive the asset directly. Articles IV and V of the original Trust created a trust funded by different assets than that specified for distribution in the amendment, specifically "all trust [c]ertificate of [d]eposit (CD) accounts" held in Gloria's name were to be "poured-over" into a trust if either of the two were under forty years old. That trust was "revoked in its entirety (and not replaced)" by the amendment. The notice provision of N.J.S.A. 3B:31-50(a) was, therefore, inconsequential.

We also find dubious plaintiff's attempt to void a resignation he freely signed by later application of a notice provision with which he failed to comply.

## II.

Plaintiff argues the trial court erred in failing to award adequate damages that arose from defendant's misconduct, a claim we reject substantially for the reasons found by the trial court in addressing plaintiff's claim that defendant should have been removed as the trustee.[3] The record evidence supports the court's determination that defendant committed only one act of misconduct.

---

[3] Plaintiff does not argue on appeal the trial court erred in denying his demand for defendant's removal.

A-2663-19

A

Plaintiff claims the trial court erred by failing to find defendant violated the Prudent Investor Act (the Act), N.J.S.A. 3B:20-11.1 to -11.12, when she did not invest $735,838.52—held in four bank accounts—"from August 2017 until this action was commenced in July 2018." He notes that, although the trial court properly determined the Trust instrument allowed defendant to hold Trust funds in commercial and savings loan accounts, that provision was only "appropriate . . . while [Gloria] was alive" and was acting as trustee. He further contends

> [t]he $497,322.35 held in the Oritani [a]ccounts generated $970.24 in interest for the period from August 2017 through December 2019. The $237,516.08 held in the Valley National Bank generated $2,355[] in interest during the same period. That is a return on investment of 0.45% over a twenty-eight[-]month period. The "investment strategy" employed by [defendant] is clearly not in compliance with the requirements of the Prudent Investor Act,

thus violating the Act and forming the basis for a damages award.

As the trial court recognized, the Act requires "[a] fiduciary [to] invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the fiduciary shall exercise reasonable care, skill, and caution." N.J.S.A. 3B:20-11.3(a). As such, a trustee is under a duty

11

to "invest and manage the trust assets solely in the interest of the beneficiaries." N.J.S.A. 3B:20-11.5. Specifically,

> [w]ithin six months after accepting trust assets, the [trustee] shall review the trust assets and shall make and implement decisions concerning the retention and disposition of assets . . . in order to bring the trust portfolio into compliance with the provisions of the trust instrument or with the requirements of [the A]ct.
>
> [N.J.S.A. 3B:20-11.7.]

After the six[-]month grace period, "the trustee is under a duty . . . 'not merely to preserve the trust property but to make it productive so that a reasonable income will be available for the'" beneficiaries. See Pa. Co. for Ins. on Lives v. Gillmore, 137 N.J. Eq. 51, 58 (Ch. 1945) (citation omitted).

But the Act provides "[t]he prudent investor rule is a default rule that may be expanded, restricted, eliminated, or otherwise altered by express provisions of the trust instrument. A fiduciary is not liable to a beneficiary to the extent that the fiduciary acted in reasonable reliance on those express provisions." N.J.S.A. 3B:20-11.2(b).

The trial court discerned Article VIII of the Trust granted broad investment powers to the trustee, "exclusively empower[ing]" the trustee in her "fiduciary capacity":

> 1.    To hold and retain all or any property received from any source, without regard to diversification,

12                                                              A-2663-19

risk, productivity, or the Trustee's personal interest in such property in any other capacity[.]

2.     To invest and reinvest the trust funds (or leave them temporarily uninvested), in any type of property and every kind of investment[.]

. . . .

4.     To deposit trust funds in any commercial savings or savings and loan accounts.

[(Emphasis added.)]

Of the monies held in the four bank accounts, the trial court found $245,797.74 were the funds earmarked for Joshua and Aliya, and those funds were paid in full in August 2018; plaintiff had no claim to those funds. From Schedule F of the accounting defendant prepared, the court also found the remaining bank accounts earned interest. $75,658 was paid in inheritance taxes; and over $1.4 million of Trust assets were invested in a broker account. Defendant, therefore, did not violate the Act by maintaining a portion of Trust assets in secure, liquid bank accounts notwithstanding the rate of return was lower than more risk-based investments.

In her fiduciary capacity, defendant was required to manage the Trust assets with a degree of caution. It is hornbook law that

[w]here the opportunity for gain more than compensates for the risk of loss, an ordinary prudent [person] will speculate with his property; but a fiduciary may not speculate with the property in his

13

charge. He must in that regard act more cautiously than a [person] of ordinary prudence; for, unlike the ordinary [person], his concern is not with increasing an estate, but with preserving the principal and providing for a regular income.

[7 N.J. Practice, Wills and Administration § 987, at 31 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed. 1984).]

"The prudent investor rule expresses a standard of conduct, not outcome. Compliance with the rule is determined in light of the facts and circumstances existing at the time of the fiduciary's decision or action." N.J.S.A. 3B:20-11.9. The trial court did not err by finding defendant had not violated the Act.

We also find convincing the trial court's observation that the decision to maintain the accounts at both banks "was made at the time both [p]laintiff and [d]efendant served as [c]o-[t]rustees of the Trust. Plaintiff should not now be allowed to seek to hold [d]efendant to a standard higher than he determined to apply to himself."

B

Plaintiff also argues the trial court erred by failing to find defendant breached her duty as trustee by refusing to make interim distributions to plaintiff. The trial court delineated the pertinent timeline from Gloria's death on August 10, 2017.

14

Plaintiff and defendant signed a Legal Representation agreement with Haas in late October 2017 and opened the Oritani account in early November. Oritani's judgment search occasioned plaintiff's resignation on November 24, 2017. As the trial court found, "[a]t no point from the execution of the [r]esignation until April 30, 2018[,] did [p]laintiff make any inquiry as to the status of the Trust or its assets." On April 30, four days prior to the date Haas completed and filed the inheritance tax return, plaintiff contacted defendant because he was considering hiring someone to manage his share of the Trust and wanted to know the value of the Morgan Stanley account. Having received no response from defendant, plaintiff's counsel wrote to defendant[4] and Haas on May 15, 2018, advising that plaintiff revoked his prior "delegation of duties" and demanded reinstatement as co-trustee. Counsel followed that letter with another on June 8, 2018, asking for information from defendant and Haas about Trust assets. Defendant's counsel, retained on or about June 17, 2018, advised plaintiff's counsel by letter dated June 19, 2018, defendant would not reinstate plaintiff as co-trustee and disputed his claim that he had delegated his authority and not resigned; defendant's counsel also

---

[4] In its decision, the trial court found this letter was sent to "[d]efendant's counsel" and Haas. The letter, made part of the record, was written to defendant and Haas. As the trial court also found, defendant did not retain her counsel until on or about June 17, 2018. The error does not impact our analysis of the case.

addressed plaintiff's counsel's prior letters to defendant. Plaintiff filed this action on July 26, 2018.

Contrary to plaintiff's contention that defendant ignored Haas's advice that interim distributions should be made while administration of the Trust was pending, the trial court found credible defendant's testimony that Haas had advised distributions should not be made until the inheritance tax return was filed. We defer to that credibility finding, particularly because Haas testified he did not recall the specific advice he had given defendant, only the advice he generally gives for interim distributions to be made. See State v. Locurto, 157 N.J. 463, 474 (1999) ("Appellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."); see also Adler v. Save, 432 N.J. Super. 101, 121-22 (App. Div. 2013) (applying the same principles in civil context). We also note Haas testified that between November 2017 and May 2018, he was "working on the estate tax return. There was an issue that came up." He "believe[d plaintiff] brought it up . . . concerning whether" a return had to be filed at all. Haas also believed plaintiff thought it need not be filed because Gloria had worked for the State of New Jersey; research revealed the return

16

had to be filed. The record shows the return was not filed and the taxes were not paid until May 4, 2018.

The trial court acknowledged defendant should have responded more timely to plaintiff's April 30 inquiry, but "[d]efendant was still operating on the basis that the [i]nheritance [tax r]eturn was the first order of priority." The court also found plaintiff's attempt to be reinstated "slowed down the process" and, despite defendant's counsel's ultimate response to plaintiff's counsel's letters, plaintiff chose to commence litigation. The trial court "reject[ed] [p]laintiff's assertion that [d]efendant delayed in administering or distributing assets." We agree.

Among the broad powers granted under the Trust, defendant had authority to "pay and advance money for the [T]rust's protection and for all expenses . . . and liabilities sustained in its administration"; and to distribute Trust assets, whether in kind or in cash. Nothing in the Trust instrument compelled defendant to make interim distributions to plaintiff during the winding up of the Trust and before a final distribution was available. See Swetland v. Swetland, 100 N.J. Eq. 196, 216-17 (Ch. 1926) (noting beneficiaries were not entitled to compel interim distributions where the instrument did not expressly allow it); Restatement (Third) of Trusts § 49, cmt. d (Am. Law Inst. 2003) ("Questions of whether, and under what

circumstances, and to what extent a beneficiary who is entitled to receive trust income may also be entitled to receive principal depend upon the terms of the trust."); see also Tannen v. Tannen, 416 N.J. Super. 248, 265-67 (App. Div. 2010) (recognizing a beneficiary's right to compel distributions is limited by the terms of the trust).

As the trial court found, in accordance with counsel's advice, defendant delayed making any interim distributions to plaintiff from November 2017 until the inheritance taxes were paid. Her caution during that relatively short span was commensurate with that expected of a trustee. See In re Est. of Bayles, 108 N.J. Super. 446, 454 (App. Div. 1970) ("With respect to assets coming into his [or her] charge, the additional burden is cast upon him [or her] as fiduciary to act more cautiously than he [or she] would be required to act in the management of his [or her] own property."). Days after the taxes were paid, plaintiff voiced his intention to contest his resignation precipitating the conflict that resulted in this litigation. In all practicality, the dispute froze the Trust assets.

Other than defendant's single $37,000 self-distribution on November 27, 2017, she did nothing untoward in administering the Trust, including her decision not to make other interim distributions, that would entitle plaintiff to damages.

C

There is no quarrel that that single distribution, without an equal distribution to plaintiff, violated defendant's fiduciary duty. See N.J.S.A. 3B:31-56. Plaintiff's claim of error involves the damages the trial court awarded him: ordering defendant to "pay interest . . . on the $37,000 not distributed to him at a rate of five percent (5%) per annum." Although in his merits brief plaintiff failed to specify the measure of damages he deemed appropriate, claiming only "[t]he imposition of further damages is warranted based upon the established malfeasance of [defendant,]" in his reply brief he contends the trial court should have applied the lost potential profits he could have garnered from an option-trading strategy he employed to gain a return on investment of over $490,000 on an $89,541 total investment from May or June through the end of December 2018.

In analyzing plaintiff's overall claim for damages, the trial court summarily dismissed the "opinion" of plaintiff's expert as "nothing more than speculation of what [p]laintiff might have earned if distributions were made to [him] from the Trust." We agree there was no guarantee the same return on investment would have been realized if defendant had distributed $37,000 to plaintiff in November 2017—a period not analyzed by the accountant— rendering plaintiff's damages calculation speculative.

19

Consequential damages are damages that naturally flow as a result of the harm caused by the defendant's wrongdoing. See Mitsui O.S.K. Lines, Ltd. v. Consol. Rail Corp., 327 N.J. Super. 343, 347 (App. Div. 2000). For example, if the defendant's wrongdoing caused harm that led to lost business profits, those "[l]ost profits may be recoverable if they can be established with a 'reasonable degree of certainty.'" Desai v. Bd. of Adjustment of Phillipsburg, 360 N.J. Super. 586, 595 (App. Div. 2003) (quoting Stanley Co. of Am. v. Hercules Powder Co., 16 N.J. 295, 314 (1954)). Nevertheless, "[a]nticipated profits that are too remote, uncertain, or speculative are not recoverable." Ibid. For a plaintiff to recover lost profits, the amount lost must be certain, and based on "sound fact[s]." See id. at 596.

Moreover, we determine the trial court was within its discretion in awarding the interest on those undistributed funds. See Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999) ("Applying principles of fairness and justice, a judge sitting in a court of equity has a broad range of discretion to fashion the appropriate remedy in order to vindicate a wrong consistent with principles of fairness, justice, and the law.").

Under N.J.S.A. 3B:31-72(a),

> [a] trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of: (1) the amount required to restore the value of the trust property and trust distributions to what they would

20

have been had the breach not occurred; or (2) the profit the trustee made by reason of the breach.

As the trial court held, "[w]hile the interest rate . . . is somewhat higher than the judgment interest rate in effect during the applicable period, . . . such differential more than compensates [p]laintiff[.]"

We determine plaintiff's other arguments pertaining to the amount of damages to which he claims entitlement to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E). We add only these brief comments.

The trial court deemed the interest award to be sufficient. It did not adopt plaintiff's present argument that he should have been awarded other "appropriate relief" under N.J.S.A. 3B:31-71(b)(10) for defendant's breach of trust. Further, plaintiff did not claim punitive damages in his verified complaint, as required. See N.J.S.A. 2A:15-5.11 ("An award of punitive damages must be specifically prayed for in the complaint."); see also In re Est. of Stockdale, 196 N.J. 275, 308 (2008) (noting a claim for punitive damages must be made in plaintiff's complaint). And, even if prayed for, plaintiff has not demonstrated by clear and convincing evidence that defendant acted with actual malice or acted with "a wanton and willful disregard of" plaintiff when she took the $37,000 distribution. See N.J.S.A. 2A:15-5.12(a). "'Actual

21

malice' [is defined as] an intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. 2A:15-5.10.

D

Plaintiff avers defendant admitted in trial testimony that she failed to advise plaintiff of the Trust's status between November 24, 2017 and June 19, 2018. During that time, he claims:

> (1) [defendant] distributed [$37,000] to herself; (2) over [$1.5 million] was transferred from Morgan Stanley to UBS; (3) over [$175,000] was moved from a passively managed account at UBS to an actively managed account at UBS; (4) numerous trades were made within the UBS account; (5) an appraisal of [Gloria's] residence was ordered and received; [and] (6) New Jersey estate tax, federal estate tax, and federal personal tax returns were prepared and filed.

N.J.S.A. 3B:31-67(a) requires "[a] trustee [to] keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." The trial court recognized plaintiff did not make any inquiry from the time he resigned until April 2018. Accepting that defendant had failed to advise plaintiff of her actions, save for the $37,000 distribution defendant took, defendant's other actions complied with her fiduciary duties as trustee. Moreover, plaintiff does not show how defendant's failure to inform him of

five of those six actions resulted in any loss to him. And the trial court compensated plaintiff for defendant's self-distribution.

Notwithstanding any Trust provision, a trustee has a "duty under subsection[] [(a)] . . . of [N.J.S.A. 3B:31-67[5]] to respond to the request of a qualified beneficiary of an irrevocable trust who has attained the age of [thirty-five] years for a copy of the trust instrument or for other information reasonably related to the administration of the trust[.]" N.J.S.A. 3B:31-5(b)(7). As already discussed, and as the trial court found, defendant should have responded more timely to plaintiff's April 30, 2018 inquiry. But fifteen days later, plaintiff's counsel sent the first missive in a series that prompted defendant's counsel's June 19, 2018 response followed by the filing of plaintiff's lawsuit. There is no evidence defendant's relatively short unresponsive period resulted in any damages to plaintiff.

E

Plaintiff's argument that the trial court failed to find defendant's "unilateral actions" after he revoked his "delegation" of authority violated her duties as trustee is without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). Plaintiff resigned. Thus, his argument that defendant violated

---

[5] Under N.J.S.A. 3B:31-67(a), "[u]nless unreasonable under the circumstances, a trustee shall promptly respond to a beneficiary's request for information related to the administration of a trust."

23

N.J.S.A. 3B:31-48, which prohibits a co-trustee from making unilateral decisions on behalf of the trust without her co-trustee's approval, is meritless. And, as the trial court found, defendant's transfer of funds to her counsel's trust account complied with the powers granted to her by the Trust.

F

The trial court granted defendant's counsel's fee application over plaintiff's opposition. Plaintiff does not challenge that award except to briefly mention, in the point arguing the trial court failed to award sufficient damages, defendant's "significant misconduct and active wrongdoing" should result in a punitive damages award and, "[a]t a minimum," defendant "should not be permitted to receive reimbursement for legal fees from the Trust." Plaintiff waived any challenge to the fee award by failing to adequately brief that issue. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived."). In any event, we affirm the fee award substantially for the reasons set forth in the trial court's written decision supporting its February 25, 2020 order. Although we recognize the court did not discuss defendant's unilateral $37,000 distribution, the record does not establish she attempted to deprive plaintiff of any Trust asset. See Behrman v. Egan, 31 N.J. Super. 95, 100 (Ch. Div. 1953), modified, 16 N.J. 97 (1954) ("[W]here the [trustee's misconduct was] not [a] result [of] actual fraud or

active misconduct, the rule [barring attorney's fees] is not applied so strictly."). Accordingly, the trial court did not abuse its discretion when it decided to award defendant legal fees associated with her defense of this litigation. See Est. of Bloomer, 43 N.J. Super. at 416.

Plaintiff also "requests that this court award counsel fees to [him] and order [defendant] be responsible for the payment of said fees." Alternatively, he requests his fees be paid by the Trust. We see no evidence in the record that plaintiff made a fee application to the trial court. We will not address that claim. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (holding an appellate court will decline to consider issues not properly presented to the trial court).

### G

Lastly, plaintiff argues the trial court abused its discretion in refusing to allow him to testify as a rebuttal witness. The argument is without merit and does not warrant further discussion. R. 2:11-3(e)(1)(E). Plaintiff made no proffer as to what rebuttal testimony he would have offered; accordingly, he did not establish the trial court abused its discretion. His reliance on Wyatt by Caldwell v. Wyatt, 217 N.J. Super. 580 (App. Div. 1987), is misplaced. There the plaintiff set forth specific facts to which the rebuttal witness would have

A-2663-19

testified, all of which may have impacted the trial's outcome. See id. at 590-91.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2663-19